BLAIN *v.* BLAIN.

4-6982                                    168 S. W. 2d 807

Opinion delivered February 22, 1943.

*M. P. Watkins,* for appellant.

*C. T. Carpenter,* for appellee.

SMITH, J.   This appeal involves the right to the custody of Glenda Marcell Blain, born August 8, 1938, the daughter of appellant and appellee. On July 12, 1941, appellant obtained a divorce from appellee, his wife, on the ground of desertion. In this decree the custody of the child was awarded to the mother, and the father was directed to contribute $5 per month to its support. On

July 26, 1941, appellant married Ruth Taylor, a young lady 19 years of age, who is now an expectant mother. On November 16, 1941, appellee gave birth to a child and admits that appellant is not its father. She declined to state who the father was.

On May 4, 1942, appellant filed this suit in which he prayed that the original decree be so modified as to award him the custody of his infant daughter, and this appeal is from the decree refusing that relief.

In addition to the proof of an illegitimate child, appellant alleges that appellee is unable to care for his daughter, and that he is. Appellee now lives with her father, who cultivates a 40-acre farm, but who is, himself, a cripple. There are 10 members of this family, including appellee and her two children.

This court has consistently held that where a home, in which there are children, has been dissolved by divorce, the chief concern of the courts is the welfare of the innocent offspring, and one circumstance always to be considered is the relative ability of the parents to properly support the children. But, while this is a circumstance always to be considered, it is not one which should always control. *Caldwell* v. *Caldwell,* 156 Ark. 383, 246 S. W. 492; *Patterson* v. *Cooper,* 163 Ark. 364, 258 S. W. 988; *Oliphant* v. *Oliphant,* 177 Ark. 613, 7 S. W. 2d 783; *McCourtney* v. *McCourtney, ante,* p. 111, 168 S. W. 2d 200.

Appellant and his present wife testified that they wanted Glenda Marcell in their home, and would rear the child in a proper environment; but appellant has no home of his own, and he, too, lives with his father, who cultivates an 80-acre farm. For a year prior to his separation from appellee, appellant lived with his wife and child in the home of appellee's father. He did not pay the lying-in expenses of his wife, when the child was born, and did not pay the support money regularly before the second child was born to appellee; and an arrearage of five months on that account was only discharged, when the present suit was begun, and then with money advanced by his sisters.

Appellant's father and mother testified that appellee's reputation for morality was bad; but the basis of that opinion appears to have been that they had heard people speak of appellee having given birth to a child of unknown paternity. No other witnesses testified that appellee bore a bad reputation for morality.

Opposed to this testimony was that of other witnesses—near neighbors of appellee—who testified that, notwithstanding the birth of the second child, appellee's reputation for morality was good, and that she had the respect of the community; that she appears to be a good mother and that Glenda Marcell appears to be well cared for, has necessary clothes and is kept clean; that the child was taken regularly to church and Sunday school, where appellee was active in church work, and that appellee had been employed as a substitute teacher in the public schools, and had the prospect of permanent employment in that capacity. Other neighbors testified that they made visits to, and received visits from, appellee and there was no ostracism of her. It was shown also that, while the home of appellee's father in which she lived was humble, it was kept neat and clean; and there was an abundance of wholesome food, and other necessities. Appellee's father testified that he, his wife and his other children had become very much attached to Glenda Marcell, and treated the child as a member of the family, and all wanted the child to remain in their home.

In *Polk* v. *State*, 40 Ark. 482, 48 Am. Rep. 17, the learned and humane Justice W. W. SMITH said: "If previous lapses from virtue are proved, reformation may be shown; for it may have been an indiscretion of which she instantly repented and which she never repeated."

So here, while a departure from a virtuous life on the part of appellee was shown with fateful consequences, it is shown also that she is making such atonement, as is possible. Under all the circumstances, herein recited, we think the court below properly refused to remove this child from its mother's care, and the decree is accordingly affirmed.