225 P.2d 489

## GRIMDITCH v. GRIMDITCH.

### No. 5161.

Supreme Court of Arizona.

Dec. 11, 1950.

Modified on Denial of Rehearing
Jan. 18, 1951.

See 71 Ariz. 237, 226 P.2d 142.

Paul M. Roca, of Phoenix, for appellant. Philip F. LaFollette, of Madison, Wis., of counsel.

Frank W. Beer, of Phoenix, for appellee.

PER CURIAM.

The facts in this case are that Gioia Grimditch, referred to herein as plaintiff married William Henry Grimditch, Jr., hereinafter called defendant, in New York City on May 17, 1943. They spent their honeymoon at Lake Placid, New York, where they remained until defendant was inducted into the U. S. Army in August, 1943. He was stationed at various army

posts in the Eastern part of the United States until October, 1945. Plaintiff lived with him most of that time except for a short period when their first child, Billy, was born in September, 1944.

In October, 1945, defendant was shipped to Korea and remained there until October, 1946, when he returned to the United States and was discharged from the army. After defendant departed for overseas plaintiff spent about 30 days between New York and Rydal, Pennsylvania. Defendant had been reared, and was living at the latter place at the time of his marriage to plaintiff. This is the only period as shown by the record that plaintiff lived at Rydal. She came to Phoenix in December, 1945, and lived in the home of her adoptive father the greater part of the time during her husband's absence overseas. Gloria, the second child of plaintiff and defendant, was born during that period of time and plaintiff was in the Good Samaritan Hospital for only a few days. Upon defendant's return to Phoenix from Korea friction immediately arose between plaintiff and defendant. Discussions were had at that time between them concerning a divorce and the custody of the children. In an effort to accommodate their differences they went to Mexico City at the suggestion of plaintiff with the understanding that they would go back East to live upon their return to Phoenix. On their return trip, however, plaintiff was seriously injured in an automobile accident a short distance west of El Paso, Texas. The defendant was driving the car and escaped with only minor injuries. The accident occurred on November 2, 1946. The plaintiff was hospitalized at St. Joseph's Hospital at Phoenix, Arizona, the following day where she remained until June 30, 1947.

About two weeks after the accident defendant discovered a number of letters addressed to plaintiff from a prominent young Phoenician, and a diary kept by plaintiff which purported to chronicle her activities during the period defendant was overseas. Defendant gathered this evidence together and with the consent of the physician attending plaintiff, went back to his home at Rydal, Pennsylvania, where he showed the documents in question to his parents and consulted his attorneys concerning the proper course to take.

He returned to Phoenix in about 30 days and on January 1, 1947, went to the hospital where plaintiff was confined to her bed and told her of his discovery and stated that he knew of her sleeping with other men during his absence, and that she was not a proper person to have the custody of their children. He demanded that she surrender their custody to him. This she refused to do but agreed that he might take Billy, the oldest child and she would take Gloria, the baby. Defendant declined to accept this offer and informed her that he would bring court action to obtain their custody. He returned shortly thereafter

to Rydal, Pennsylvania, where on the 8th day of January, 1948, almost a year after his departure from Phoenix defendant filed an action in libel in the courts of Pennsylvania seeking a divorce from plaintiff upon the alleged ground of adultery in the State of Arizona with divers persons alleged to be unknown to the libelant.

Shortly after leaving the hospital on June 30, 1947, plaintiff filed an action for divorce against defendant in the superior court of Maricopa County. On January 9, 1948 she dismissed that cause of action and filed a second cause of action asking for a divorce from defendant based upon cruelty and desertion. Thereafter defendant filed motions to dismiss the complaint and for stay of proceedings in Arizona upon the ground that an action was then pending in the court of common pleas in Pennsylvania where defendant was seeking a divorce from plaintiff; that the Arizona court was without jurisdiction to try such cause for the reason that neither party to such divorce action was domiciled in Arizona. Along with these motions defendant filed his answer and counterclaim and at approximately the same time filed a petition for a writ of habeas corpus directing plaintiff to produce the children of the parties in court at a time certain and show cause if any she had why custody of said children should not be, by order of the court, awarded to the defendant. By stipulation the two causes of action were consolidated and tried together.

The trial court denied the motions to dismiss and for stay of proceedings and thereafter the cause proceeded to trial to the court sitting without a jury. At the close of the case the court quashed the writ of habeas corpus and rendered judgment dissolving the marital relations between the parties without designating who was at fault and gave the custody of the children to plaintiff except as therein provided. From this judgment defendant appeals and assigns as error:

1. The denial by the trial court of defendant's motion to dismiss upon the ground that the evidence was insufficient to give the court jurisdiction of the subject matter.

2. The granting of the divorce for the reason that the court was without jurisdiction of the subject matter.

3. The denial of defendant's motion to dismiss at the close of plaintiff's case for the reason that plaintiff had not made a prima facie case.

4. In granting the divorce of the parties for the reason that the whole evidence failed to establish any of the grounds for divorce alleged in the complaint.

5. In granting custody of the children to plaintiff for the reason that the court abused its discretion in doing so.

6. In quashing the writ of habeas corpus for the reason that the court was without jurisdiction in the divorce action and

should have proceeded to determine the custody of the children under the writ.

7. In imposing undue burdens upon defendant by requiring an unreasonable bond from him as a condition precedent to his removal of the children from the jurisdiction of the Arizona court.

█ The first assignment squarely presents the question of the jurisdiction of the Arizona court over the subject matter of the divorce action. The husband's residence was at all times after their marriage in Rydal, Pennsylvania. His absence in the service in the U. S. Army did not operate to change that residence. Ryland v. Ryland, 65 Ariz. 97, 102, 174 P.2d 741.

We stated in the case of Sneed v. Sneed, 1912, 14 Ariz. 17, at page 22, 123 P. 312, at page 314, 40 L.R.A.,N.S., 99, that: "The general rule may be stated to be that 'the law fixes the domicile of the wife by that of the husband and denies to her *during cohabitation* the power of acquiring a domicile of her own separate and apart from him.' 'The later and better cases, however, have broken away from this rule where the wife has been abandoned or forced by brutal treatment (or, we add, for any cause sufficient in law as grounds for divorce) to leave the husband, when she is permitted to establish a domicile for herself.' " (Emphasis supplied.)

This rule seems to express the view of the courts in the majority of jurisdictions. Under all the evidence in this case plaintiff and defendant had not cohabited for over a year at the time plaintiff filed her action for divorce in the Arizona courts.

In this case defendant on January 1, 1947, told plaintiff that he proposed to get a divorce and would fight for the custody of their children. Plaintiff states that she then definitely made up her mind to permanently reside in Arizona where her adoptive father lived and where she had grown up. The defendant, within a week after making this statement to plaintiff, left Arizona to return to Rydal, Pennsylvania, where he remained until the trial of the case without making any efforts to readjust his marital relationship with plaintiff or inviting her to his home or in any wise providing for her support except that he claims to have paid a $2800 medical bill during her confinement in the hospital. She states that the medical bill to the date of trial had been approximately $10,-000. It is difficult to understand why plaintiff should be required to return to Pennsylvania to bring an action for divorce under such circumstances.

██ The husband under the law may establish a residence anywhere other than his matrimonial domicile at any time regardless of whether the wife has been guilty of any wrong or not and after he has established such new domicile if he acts in good faith he may maintain a divorce action there against his wife although she still resides in the matrimonial domicile. The wife is no longer a chattel

in the United States and especially is this true in Arizona where she has a vested right in the community property and may deal with her separate property in any manner she may deem proper independently of her husband. She has the right to serve on juries and under the State and Federal Constitution has the right to exercise the elective franchise.

In the case of Cosper v. Valley Bank, 28 Ariz. 373, 237 P. 175, 176, we said: "Development of the community property law of the western states has gone hand in hand with the general emancipation of women from the economic bonds which have so long burdened them. While under the common law the husband and wife were 'one,' and he was always the 'one,' the world has of recent years gone a long way toward recognizing that even a married woman was a human being, with most of the rights of such, and that the status of marriage partook more of the nature of a partnership than that of master and servant, or guardian and ward. * * *"

In the case of Hall v. Weatherford, 32 Ariz. 370, 259 P. 282, 285, 56 A.L.R. 903, we said: "From the case of Charauleau v. Woffenden, 1 Ariz. 243, 25 P. 652, to that of Schofield v. Gold, 26 Ariz. 296, 225 P. 71, 37 A.L.R. 275, our attitude has been that the wife was an independent human being, with the full power to decide and determine for herself all questions involving her rights, and the old presumption that though before marriage, and during widowhood, she was as fully capable of managing her affairs as a man under the same circumstances, while coverture existed she lost all independent volition, knowledge, and capacity, and was to be treated as an infant under guardianship, so far as Arizona is concerned, is utterly obsolete. Since such is our theory of the marriage status, cases which are based either consciously or unconsciously on the old idea of the inferiority of the female sex and the subserviency of the wife to the husband are not in point. We hold that when property rights are concerned the same rule of estoppel applies to a woman as to a man; to the wife as to the husband; to a partner in the marriage relation as to a partner in any other relation of life."

It will be seen from the above quotation that we have accorded to a married woman rights that are more liberal than the rule laid down in the Sneed case, supra.

In the instant case, however, it is not necessary to extend the rule in that case. We hold that defendant was guilty of such cruelty toward plaintiff during her confinement in St. Joseph's Hospital as to constitute a ground for divorce under the Arizona statute, thus entitling plaintiff to establish her domicile in Arizona.

The evidence shows that on January 1, 1947, while plaintiff lay helpless in St. Joseph's Hospital with a badly broken body, immobilized by various casts, the defendant went to her room and informed her of his knowledge of her misconduct

during his absence overseas. He charged her with being unfit to have the custody of their children and threatened to take them with him to his home in Pennsylvania; that he knew of her sleeping with other men and mentioned the name of one of them from whom she had received endearing letters (then in his possession). He then informed her of his intention to procure a divorce from her and to obtain the custody of their children unless she would voluntarily surrender them to him. Soon thereafter he returned to Pennsylvania where he remained until the date of the trial without manifesting any concern about the progress of her recovery although he was in control of the motor vehicle in which she was riding at the time of her injury.

Even though the statements and charges made by defendant concerning her were true (and we are of the view that the evidence overwhelmingly establishes their truth) nevertheless his conduct under such circumstances constituted mental cruelty furnishing a basis for an action for divorce.

■ We conclude therefore that plaintiff, on January 9, 1948, upon being informed that her marriage relations with defendant were at an end; that he proposed to procure a divorce from her because of the charges enumerated above, she had the legal right to establish her domicile in Arizona, the home of her childhood and of her adoptive father. And that on January 9, 1949, she had been an actual bona fide resident of the State of Arizona for a period of more than one year and a resident of the County of Maricopa for more than six months immediately preceding that date and that she had the legal right to maintain an action for divorce in this jurisdiction. We are of the opinion that there is no merit whatever to the contention of the defendant that her temporary residence in her summer cottage in Yavapai County during a portion of the summer of 1948 destroyed her status as an actual resident of Maricopa County for the preceding six months. It thus follows that the court properly denied defendant's motion to dismiss for lack of jurisdiction or for failure to make out a prima facie case at the close of plaintiff's case.

■ The court in rendering its judgment followed the rule laid down in Brown v. Brown, 38 Ariz. 459, 300 P. 1007, merely dissolving the bonds of matrimony theretofore existing between the parties without fixing the blame on either party. We held in that case that such a judgment was valid and enforceable.

■ It is contended that the court abused its discretion in awarding the children to plaintiff. This is the most serious question presented. We have so often held that the primary concern of the court, in matters of this kind, is the welfare of the children that no citation of authority is required to sustain it.

■ The disposition of minor children where a divorce is granted is within the

sound discretion and jurisdiction of the trial court. The governing statute in this behalf reads in part: " * * * In the final decree of divorce the court may, in addition to the division of the common property of the parties, or in lieu thereof, direct the husband to pay to the wife such amounts as may be necessary for the support and maintenance of the wife, and the *minor children of the parties whose custody may be awarded to the wife, as may be necessary or·proper,* * * *." (Emphasis supplied.) Sec. 27-810, A.C.A.1939.

Defendant is confronted with the proposition that he must show an abuse of discretion on the part of the trial judge in awarding the custody of the children. The lower court had the parties before it and this decision cannot ·be altered by this appellate court unless it clearly appears that the court abused its discretion. Bradstreet v. Bradstreet, 34 Ariz. 340, 345, 271 P. 717.

█ At the outset it must be remembered that the trial court in making provision for the custody of the children had to be guided ·by the conditions and circumstances existing at the time of the trial. Prouty v. Prouty, 16 Cal.2d 190, 105 P.2d 295. The trial in this case was had in February of 1948, one and one-half years after the chronicled events in plaintiff's diary and 13 months after plaintiff's accident. It may well be that the trial judge thought that the effects of plaintiff's serious injuries had given her sufficient time

to contemplate the error of her ways, and that it was reasonable to suppose that plaintiff's experiences in this behalf would have a sobering and stabilizing effect on her future conduct. In any event the court by its judgment and decree did not brand her as the offending party and even if it had it would still have been within the discretion and jurisdiction of the lower court to award her the custody of the minor children—this in view of the fact, as has been said "The offense is against the other party to the marriage and not against the child."

█ The guilt or innocence of the parents is not controlling and some courts have held that custody may be awarded to one against whom divorce was decreed, see cases cited under Note 72, 27 C.J.S., Divorce, § 309, although guilty of *adultery.* In re De Leon, 70 Cal.App. 1, 232 P. 738; Norman v. Norman, 27 Wash.2d 25, 176 P.2d 349; Martin v. Martin, 27 Wash.2d 308, 178 P.2d 284; Meredith v. Meredith, 1947, 148 Neb. 845, 29 N.W.2d 643; Blain v. Blain, 205 Ark. 346, 168 S.W.2d 807.·

In addition to the facts heretofore delineated, there was before the court ample evidence indicating that plaintiff is and was financially able to provide the children with every care, and had furnished the support for them for more than a year prior to trial from her private funds. During the four days of the trial the trial judge had the opportunity to observe her upon the witness stand on direct and cross examination. Every opportunity was afford-

ed him to appraise plaintiff's character and to consider and form a judgment as to her stability, honesty, fairness, mental attitude, love for her children, and her sense of responsibility.

At that time the little boy was 3½ years old and Gloria, the daughter, was approximately 20 months old, and from the date of their birth had been under the care and control of plaintiff. In this behalf she was assisted by an excellent nursemaid. This nurse testified that plaintiff was a good mother and loved her children intensely. The court should and undoubtedly · did take into consideration the age, health, and sex of the children. It is trite to say that all things being equal the mother is preferred in awarding custody of a child of tender years. They had not reached the age of . discernment and were totally unaware of the indiscretions of the mother that had been committed more than a year and a half before the trial. This question of the custody of the children was bitterly contested at the trial, and the experienced trial judge was well aware that the best interests of the children were paramount and controlling. The personal desires of the parents must yield to this object. Bradstreet v. Bradstreet, supra.

Many reputable citizens of Phoenix testified and vouched for plaintiff's character. They also testified, from visitations and intimate knowledge of the home life and physical surroundings of the children, that the children had always been meticulously attended to and provided for.

It was also apparent to the trial court that there was no blot on the character of the defendant. His background, training, financial and social position are such that it could not be said that the children would suffer in his custody, but nevertheless he testified that he proposed to take them to his parents' home and later to set up a separate home of his own and there install the children with a nurse while he attended law school.

In view of all the circumstances including the impaired physical condition of plaintiff by reason of injuries sustained in the automobile accident we are not prepared to say that the trial court's conclusions relating to the custody of the children amounts to an abuse of discretion, though a reading of the record might lead us to a different conclusion, than that reached by him.

That the trial judge envisioned changing circumstances is evidenced by the fact that the judgment, in addition to awarding the temporary custody of the children for one month each for the years 1948, 1949, 1950 and 1951, *enlarged* this period to two months each year beginning in June, 1952, with privilege to remove the children to appellant's home in Pennsylvania during any of the time the children are in his custody under the decree. The court in

any event could not be expected to anticipate the circumstances that would be in existence beyond 1952, or the future requirements of the children.

In any event the children during their minority will be under the jurisdiction of the court which is available at all times to make such orders as will be necessary or expedient looking toward their true welfare. By the provisions of Sec. 27-811, A.C.A.1939, the court is authorized from time to time *after* the entry of a final decree on the petition of either party to amend, change, or alter any provisions therein respecting the care, custody, or maintenance of the children of the parties as the circumstances of the parents and the welfare of the children may require. This discretion and jurisdiction are continuous. Johnson v. Johnson, 46 Ariz. 535, 52 P.2d 1162; Gotthelf v. Gotthelf, 38 Ariz. 369, 300 P. 186. With reference to the continuing jurisdiction of the court, we think the rule is well put in re De Leon, supra [70 Cal.App. 1, 232 P. 740], wherein the court was considering a code section similar to our secs. 27-810 and 27-811, supra. There the court said: "Whatever may be the terms of the order awarding the custody of a minor child to either of the parents in a divorce proceeding, it is evident from the wording of this section that, so long as the child involved continues to be a minor, *there is no such thing as a final order pertaining to the custody* of such child. The care and custody of the child can be inquired into at any time. * * *" (Emphasis supplied.)

After the children, by reason of their age, are capable of discerning or of being influenced in any degree by any misconduct of plaintiff, should it be made to appear upon application by defendant for change of custody that plaintiff has been guilty of conduct such as was indicated in the diary (received in evidence in this case) it would be the duty of the court in consideration of the best interests of the children to remove them forthwith from her custody.

In placing the custody of the children with the mother, we believe that the trial court was largely actuated by the fact that her indiscretions occurred at a time when the children were unable to comprehend. Eminently apropos to this discussion of the law applicable and the approach that should be made in a situation of this kind is the following statement from the case of Ross v. Ross, 89 Colo. 536, 5 P.2d 246, 249, 78 A.L.R. 313:

"While it is true that ordinarily a custody order should be modified only when the conditions have changed since the order was made, or material facts previously unknown have been discovered, it is also true that in certain circumstances the court may consider evidence introduced prior to the decree. Courts are disposed—properly so—to award to the mother, un-

til otherwise ordered, the custody of very young children, especially girls, even where the mother's conduct has been such that, if the child were older, its custody would have been placed elsewhere. Conduct of the mother that would have no detrimental effect upon a child so young that its powers of observation and imitation are close to the minimum might be considered by the court sufficient cause to take from the mother the custody of a child somewhat older. Much depends upon the nature of the mother's conduct and the age and intelligence of the child. At the time the divorce case was tried and the court made its findings of fact upon which the decree was based Joan was about 3 years old. At the time the decree was modified, she was over 5. That her powers of observation and imitation had increased was evidenced by her use of certain improper words that her mother sometimes used.

"There was introduced some evidence relating to the mother's conduct before the signing of the divorce decree and some relating to her conduct thereafter. The former conduct shed some light upon the latter, and enabled the court to form a more accurate judgment concerning the moral character of the latter."

For the reasons hereinabove stated:

Judgment affirmed.

LA PRADE, C. J., and UDALL, STANFORD, PHELPS and DE CONCINI, JJ., concur.