ESTATE of Harrison P. SHEDD, Deceased; First National Bank of Arizona, Phoenix, Executor, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 14855.

United States Court of Appeals Ninth Circuit.

Oct. 9, 1956.

Rehearing Denied Nov. 13, 1956.

Joseph D. Brady, Walter L. Nossaman, Brady, Nossaman & Walker, Joseph L. Wyatt, Jr., Los Angeles, Cal., for petitioner.

H. Brian Holland, Asst. Atty. Gen., Lee A. Jackson, A. F. Prescott, Karl Schmeidler, I. Henry Kutz, Sp. Assts. to Atty. Gen., for respondent.

Before DENMAN, Chief Judge, and POPE and LEMMON, Circuit Judges.

LEMMON, Circuit Judge.

The petitioner complains that the testator's "verbal error" in using a "term of art—power of appointment"—is sought to be employed as a means of costing the estate $71,000, plus interest, in Federal Estate Tax liability.

"This controversy," the criticism continues, "is little more than an exercise in semantics."

It might be answered that all legal disputation is, in the final analysis, "an exercise in semantics". Since man has not yet evolved into a telepathic being, he must resort to language in order to express his thoughts and desires.

A court must interpret a will according to the language that the testator actually used—not according to what the court might *guess* that the decedent *might* have said *if* he had chosen the right words.

The law is shot through with semantic distinctions: Assault versus battery; flotsam versus jetsam; law versus equity; tort versus contract; bailor versus bailee; drawer versus drawee; trustor versus trustee; *and fee simple versus terminable interest.*

Semantics has played an even more catastrophic role in men's lives. Killers have been hanged because juries have found them guilty of murder instead of manslaughter. The present petitioner's hazard is much less grave.

### 1. Statement of Facts

The facts of this case were all presented to the Tax Court by stipulation. They may be summarized as follows:

The decedent died a resident of Phoenix, Arizona, on November 1, 1949. His estate consisted of real and personal property, which "was entirely his sole and separate property; no part thereof ever was the community property of decedent and his spouse, * * *" It was administered under the laws of the State of Arizona by an executor and trustee of the trust estate created by the will. The respondent determined "the gross estate for basic tax" to be $508,965.77.

The Federal estate tax return disclosed a gross estate of $503,345.73, and a net estate tax of $38,390.26, which was fully paid by the estate. The adjusted gross estate was $437,935.03 and in the tax return there was claimed a deduction of $218,967.51 for bequests to the surviving spouse.

The decedent executed a will on January 19, 1946, which, after disposing of personal effects to his wife and his son, left the residue of his estate in trust to a corporate trustee, the predecessor of the present executor and trustee.

The trust provided for distribution of two-thirds of the trust estate income to the decedent's wife and one-third to his son during their respective lives, and named certain beneficiaries who were to be entitled to the income upon their death.

The trust was to terminate upon the death of the survivor of two named grandchildren, and the corpus was then to be distributed to the issue of the grandchildren with remainders over in default of issue.

The decedent executed a first codicil to his will on May 9, 1946, making certain changes in the trust but not altering the provision giving two-thirds of the income to his wife for life.

He executed a second codicil on July 26, 1948, adding the following paragraph to his will:

"Notwithstanding any other provisions of this Will, I hereby give and grant to my wife, Mary Redding Shedd, if she survives me, a *power of appointment* over one-half (½) of the corpus of the trust estate created under Item VI of this Last Will and Testament *exercisable* at any time during her life *in her favor or in favor of others by written instructions* filed with the Trustee or *exercisable* under her Last Will and Testament. *In the event my said wife shall fail to exercise said power of appointment by her last unrevoked written instructions* filed with the Trustee during her lifetime or under her Last Will and Testament, then the said one-half (½) of the corpus of the trust estate subject to her power of appointment shall be managed and distributed in accordance with the provisions of Item VI of my Last Will and Testament." [Emphasis supplied.]

On October 16, 1950, prior to the distribution of the estate, the decedent's widow filed written instructions with the executor-trustee, exercising her power of appointment in favor of herself. Accordingly, pursuant to an order of the probate court, one-half of the residue of the estate was distributed to her.

The respondent determined that the widow's interest in one-half of the residue did not qualify for the marital deduction claimed to the extent of $218,617.51, and determined a deficiency of $71,096.05 in the estate tax liability.

The Tax Court held that the interest received by the surviving spouse "was

terminable within the purview of § 812 (e) (1) (B) [*infra*] even though it was the 'practical equivalent of ownership.' " It did not come within the exception to "the terminable interest rule" contained in § 812(e) (1) (F), [*infra*] since "in order to qualify under its provisions the surviving spouse must be entitled to '*all* of the income from the corpus of the trust' and be empowered to 'appoint the *entire* corpus free of the trust.' (Emphasis supplied). Here the surviving spouse was entitled to two-thirds of the income from the corpus of the trust and had the broadest possible power of appointment over one-half of the corpus."

### 2. *The Applicable Statute*

Revenue Act of 1948, c. 168, P.L. 471, § 361, Internal Revenue Code of 1939, as amended, 26 U.S.C.A. § 812:

"§ 812. Net estate

"For the purpose of the tax the value of the net estate shall be determined, in the case of a citizen or resident of the United States by deducting from the value of the gross estate—

\* \* \* \* \* \*

"*(e) Bequests, etc., to surviving spouse*

"*(1) Allowance of marital deduction*

"*(A) In general.*

"An amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate.

"*(B) Life estate or other terminable interest.*

"Where, upon the lapse of time, upon the occurrence of an event or contingency, or upon the failure of an event or contingency to occur, such interest passing to the surviving spouse will terminate or fail, no deduction shall be allowed with respect to such interest—

"(i) if an interest in such property passes or has passed (for less than an adequate and full consideration in money or money's worth) from the decedent to any person other than such surviving spouse (or the estate of such spouse); and

"(ii) if by reason of such passing such person (or his heirs or assigns) may possess or enjoy any part of such property after such termination or failure of the interest so passing to the surviving spouse;

and no deduction shall be allowed with respect to such interest (even if such deduction is not disallowed under clauses (i) and (ii))—

"(iii) if such interest is to be acquired for the surviving spouse, pursuant to directions of the decedent, by his executor or by the trustee of a trust.

For the purposes of this subparagraph, an interest shall not be considered as an interest which will terminate or fail merely because it is the ownership of a bond, note, or similar contractual obligation, the discharge of which would not have the effect of an annuity for life or for a term.

\* \* \* \* \* \*

"*(F) Trust with power of appointment in surviving spouse.*

"In the case of an interest in property passing from the decedent in trust, if under the terms of the trust his surviving spouse is entitled for life to *all* the income from the corpus of the trust, payable annually or at more frequent intervals, with power in the surviving spouse to appoint the *entire* corpus free of the trust (exercisable in favor of such surviving spouse, or of the estate of such surviving spouse, or in favor of either, whether or not in each case the power is exercisable in favor of others), and with no power in any other person to appoint any part of the corpus to any person other than the surviving spouse—

"(i) the interest so passing shall, for the purposes of subparagraph (A), be considered as passing to the surviving spouse, and

"(ii) no part of the interest so passing shall, for the purposes of subparagraph (B) (i), be considered as passing to any person other than the surviving spouse.

This subparagraph shall be applicable only if, under the terms of the trust, such power in the surviving spouse to appoint the corpus, whether exercisable by will or during life, is exercisable by such spouse alone and in all events." [Emphasis supplied.]

2. *The Precise Moment to Which One Must Look in Determining Whether the Surviving Spouse's Interest Is Terminable Must Be Fixed, for Federal Estate Tax Purposes, According to Federal Law.*

■ At the outset, it is important to decide what law shall govern us in determining the "point of reference", as it were, according to which we shall say that the interest of the surviving spouse is "terminable", within the purview of § 812(e) (1) (B), supra. In other words, shall we adopt as a test the terminability of her interest as viewed at the instant of her husband's death? Or shall we await the event and *then,* like Monday morning quarterbacks, say, with the petitioner, that since Mrs. Shedd, nearly a year after her husband's death, exercised her rights in a "timely" manner, "the second codicil amounted to a gift in fee to Mrs. Shedd"?

The Supreme Court has repeatedly held that problems of this nature should be resolved according to *Federal* law.

In Morgan v. Commissioner, 1940, 309 U.S. 78, 80–81, 60 S.Ct. 424, 426, 84 L. Ed. 585, the Court said:

"State law creates legal interests and rights. The federal revenue acts designate what interests or rights, so created, shall be taxed. Our duty is to ascertain the meaning of the words used to specify the thing tax-ed. If it is found in a given case that an interest or right created by local law was the object intended to be taxed, the federal law must prevail no matter what name is given to the interest or right by state law.

"None of the revenue acts has defined the phrase 'general power of appointment'. The distinction usually made between a general and a special power lies in the circumstance that, under the former, the donee may appoint to anyone, including his own estate or his creditors, thus having as full domination over the property as if he owned it; whereas, under the latter, the donee may appoint only amongst a restricted or designated class of persons other than himself."

In Rogers' Estate v. Commissioner, 1943, 320 U.S. 410, 412, 414, 64 S.Ct. 172, 173, 88 L.Ed. 134, the Court had before it § 302 of the Revenue Act of 1926, 26 U.S.C.A. Int.Rev.Acts, page 230, whereby—

" 'The value of the gross estate of the decedent shall be determined by including the *value at the time of his death* of all property

\*    \*    \*    \*    \*    \*

" '(f) To the extent of any property passing under a general power of appointment exercised by the decedent (1) by will'. \*    \*    \*

"Whether by a testamentary exercise of a general power of appointment property passed under § 302 (f) *is a question of federal law,* once state law has made clear, as it has here, that the appointment had legal validity and brought into being new interests in property. [Case cited.] *Were it not so, federal tax legislation would be the victim of conflicting state decisions on matters relating to local concerns and quite unrelated to the single uniform purpose of federal taxation.* [Case cited.] In taxing 'property passing under a general power of appointment exercised \*    \*    \* by will', Congress did not deal with recondite

niceties of property law nor incorporate a crazy-quilt of local formalisms or historic survivals. 'The importation of these distinctions and controversies from the law of property into the administration of the estate tax precludes a fair and workable tax system.' [Case cited.] Congress used apt language to tax dispositions which came into being by the exercise of a testamentary privilege availed of by a decedent and which in no other way could have come into being." [Emphasis supplied.]

Up to this point we have referred to Supreme Court decisions that have traced the ambit of the authority of Federal law in estate tax problems generally. In the following section, we will assess the influence and incidence of Federal law upon the specific problem here presented:

"For Federal estate tax purposes, at what instant of time does the nature of a 'testamentary gift' become forever fixed?"

3. *For Federal Estate Tax Purposes, The Moment Of Death is the Chronological Fixative of the Nature of a Testamentary Gift.*

The petitioner makes much of the argument that all that Mrs. Shedd had to do was "to reach out her hand" to take the bequest. In emphasizing this point, the petitioner loses sight of the fundamental fact that an estate tax is imposed not upon "the interest to which some person *succeeds* on a death, but the interest which *ceased* by reason of the death". [Emphasis supplied.] [1]

As a necessary corollary to this proposition, the deduction "from the value of the gross estate" allowed because of "bequests, etc., to surviving spouse", under § 812(e) (1) (A), depends upon whether the interest bequeathed to the testamentary donee was "terminable", as viewed *at the instant of the donor's death*. The Supreme Court has repeatedly held that *that* time is the determinative one.

Like a somber refrain, the words "at death" and "at the date of death" run through the many Supreme Court decisions on this point.

In the leading case of Reinecke v. Northern Trust Company, 1929, 278 U.S. 339, 347, 49 S.Ct. 123, 125, 73 L.Ed. 410, Mr. Justice (later Mr. Chief Justice) Stone used the following language:

"In its plan and scope the [estate] tax is one imposed on transfers *at death* or made in contemplation of death and is measured *by the value at death* of the interest which is transferred. [Cases cited.]" [Emphasis supplied.]

And in Detroit Bank v. United States, 1943, 317 U.S. 329, 332, 63 S.Ct. 297, 298, 87 L.Ed. 304, Mr. Chief Justice Stone said:

"The [estate tax] lien attaches *at the date of the decedent's death,* since the gross estate is determined *as of that date* and the estate tax itself becomes an obligation of the estate *at that time* without assessment. [Cases cited.]" [Emphasis supplied.] [2]

And "the existence of the power [of appointment] does not of itself vest any

---

1. Hanson: "Death Duties", page 63 quoted with approval by Mr. Justice (later Mr. Chief Justice) White, in the leading case of Knowlton v. Moore, 1900, 178 U. S. 41, 49, 20 S.Ct. 747, 751, 44 L.Ed. 969, and quoted again with approval by Mr. Justice Holmes in Edwards v. Slocum, 1924, 264 U.S. 61, 62–63, 44 S.Ct. 293, 68 L.Ed. 564. Knowlton v. Moore, supra, contains an admirable exposition of the philosophy and the history of estate taxes, 178 U.S. at pages 47–61, 20 S.Ct. 750–755. See also Nichols v. Coolidge, 1927,

274 U.S. 531, 537, 47 S.Ct. 710, 71 L.Ed. 1184; Y.M.C.A. v. Davis, 1924, 264 U.S. 47, 50, 44 S.Ct. 291, 68 L.Ed. 558; and cf. Riggs v. Del Drago, 1942, 317 U.S. 95, 98–99, note 4, 63 S.Ct. 109, 87 L.Ed. 106; 28 Am.Jur. pp. 8–9.

2. See also May v. Heiner, 1930, 281 U.S. 238, 244–245, 50 S.Ct. 286, 74 L.Ed. 826; United States v. Provident Trust Co., 1934, 291 U.S. 272, 281, 54 S.Ct. 389, 78 L.Ed. 793; Fernandez v. Wiener, 1945, 326 U.S. 340, 361, 66 S.Ct. 178, 90 L.Ed. 116; and the cases cited in Note 1, supra.

estate in the donee." United States **v.** Field, 1921, 255 U.S. 257, 263, 41 S.Ct. 256, 258, 65 L.Ed. 617.

Finally, the legislative history of § 812 (e) (1) demonstrates to a mathematical certainty that Congress intended "the date of the decedent's death" to be crucial in determining whether the interest "passing to the surviving spouse will terminate or fail". In Senate Report No. 1013, March 16, 1948, United States Code Congressional Service, 80th Cong., 2d Sess., 1948, vol. 2, we find the following significant expressions:

"Generally, a power of appointment is not an 'interest in property'. * * * " [Page 1225.]

"The amount of the marital deduction is determined by the value at the date of the decedent's death of the interest in property which passes or has passed to the surviving spouse, * * *." [Page 1225.]

"In determining whether an interest in property is a terminable interest and whether the conditions of clauses (i) and (ii) [supra] are met, the situation is viewed as at the date of the decedent's death * * *." [Page 1232.]

"The election of the executor to determine the value of the gross estate as of a date subsequent to the decedent's death, as provided in section 811(j) of the code, does not extend to such later date the time for determining the character of the interest passing to the surviving spouse and its deductibility under subparagraph (B)." [Page 1232.]

Applying the foregoing legal principles to the case at bar, we cannot say that on November 1, 1949, the date of Mr. Shedd's death, it could have been foretold with any degree of certainty that Mrs. Shedd would file written instructions with the executor-trustee on October 16, 1950, exercising her power of appointment in favor of herself. So far as the record shows, it took the widow nearly a year to make up her mind. The scales could well have tipped the other way. There is no legal presumption that Mrs. Shedd would "reach out her hand".

Men—and women too—have been known to decline bequests. As recently as June 29, 1956, *The Sacramento Bee* carried a local news story to the effect that Mrs. Doris Nemetz, of Milwaukee, Wis., had "refused an outright gift of $5,766.54 * * * her share of the estate left by her father". In a letter to the attorney for the administratrix of the estate, Mrs. Nemetz "said only that she was refusing the money because of moral principles".

Coming closer to the instant facts, my brother POPE suggests the following:

"If the wife in this case had assets of her own and if she was very fond of the grandchildren, who are beneficiaries under the will and the trust, she might well have declined to exercise the power of appointment in her own favor. In that case, the full interest would not pass to the surviving spouse because of the 'failure of the event or contingency to occur'."

Be that as it may, it can be said that, as matter of law, on November 1, 1949, Mrs. Shedd's interest in one-half of the corpus of the trust estate was "terminable".

The petitioner relies heavily upon the case of Corliss v. Bowers, 1930, 281 U.S. 376, 378, 50 S.Ct. 336, 337, 74 L.Ed. 916, in which Mr. Justice Holmes stated that "The income that is subject to a man's unfettered command and that he is free to enjoy at his own option may be taxed to him as his income, whether he sees fit to enjoy it or not." But the learned justice was there dealing with an *income* tax, not an *estate* tax. That fact alone at once distinguishes *Corliss* from the case at bar. As we have seen, an estate tax is *sui generis*.

Indeed, it was Mr. Justice Holmes who, in Edwards v. Slocum, supra, followed Hanson's dictum, quoted with approval in Knowlton v. Moore, supra, to the effect that an estate tax is not upon " 'the interest to which some person succeeds on a

death, but the interest which ceased by reason of the death.' "

The finality of death in this as in other respects is strikingly indicated by Hanson's careful use of tense-forms. He refers to "the interest to which some person succeeds," using the *present* tense in connection with the *successor's* interest, which may be increased later by some act of his own, or otherwise. But Hanson employs the *past* tense in speaking of "the interest which ceased by reason of the death." And it is *that* interest which the *estate* tax, as contradistinguished from a *succession* tax, reaches. Death freezes the estate's tax obligation into immutability.

Faced with an overwhelming weight of authority contrary to its position, the petitioner grudgingly admits the soundness of its adversary's contention "that the controlling consideration is not what happened after the decedent dies, but what existed at the time of his death". The petitioner comments:

"Generally speaking we agree * * * But the rule stated has striking, and necessary, exceptions."

In other words, the petitioner has recourse to the "yes-but" type of argument, so frequently heard from unsuccessful litigants below: *"Yes,* but *our* case is different: the rules don't apply to *us."* In the present instance, at least, we are not impressed with that sort of reasoning.

■■ In summary, we hold that the question of whether Mrs. Shedd's interest was terminable and the estate disentitled to the marital deduction, must be viewed *as of the time that Mr. Shedd died.* The fact that she later exercised her power is immaterial. As of the date of her husband's death, Mrs. Shedd's interest in one-half of the corpus of the trust estate was "terminable", and his estate was

therefore not entitled to the marital deduction claimed under § 812(e) (1) (A).

4. *The Two Arizona Cases Are Not in Point.*

The petitioner places great stress upon two cases decided by the Supreme Court of Arizona—In re Anderson's Will, 16 Ariz. 185, 141 P. 723, and In re Hayward's Estate, 57 Ariz. 51, 110 P.2d 956, hereinafter *Anderson* and *Hayward,* respectively.

(a) The Anderson Case

In Anderson, the wife's will, after describing the property, granted, bargained, and sold it to her husband, if he was to survive her, "To have and to hold unto the said Peter Anderson in life rent [3] subject to the terms of the trust hereinafter written."

The will read in part as follows [16 Ariz. 185, 141 P. 724]:

" 'Third. After the payment of all debts owing by the parties hereto the remainder shall become the sole property of the survivor who shall have the power to dispose of any or all of said real estate and personal property and grant, bargain, sell and convey the same and enjoy the same during her life or his lifetime; * * *.

" 'Fourth. On the death of the survivor, his or her whole estate shall be divided equally share and share alike among the nearest heirs at law of the parties of the first and second parts and a like share shall also become the property of the said Violet Thompson should she then be alive.' "

The Supreme Court of Arizona held that the above words, as well as the will itself, transferred at once the fee simple to the husband. The court used the following language:

---

3. A Scots law term meaning life estate.—Ballentine's Law Dictionary, 1916, p. 286. "An estate for life; a right to the use and enjoyment of an estate or thing for one's life, but without destruction of its substance."—Black's Law Dictionary,

3d ed., p. 1117. "Scots Law. A right to use and enjoy a thing during life, the substance of it being preserved.—Webster's New International Dictionary, Second Edition, Unabridged (1955), p. 1428.

"If established and admitted to probate as such will, then the question first to arise would be whether, under the terms of the will, Peter Anderson would take the residue of the property, after setting aside the sums to Blom and Violet Thompson and paying all the debts, as a life estate, or would he take the entire estate in fee simple? It is clear that the survivor, Peter Anderson, would take a fee-simple title both under the terms of the will and under the express provisions of the statute (paragraph 723, Rev.St.Ariz.1901) [*infra*]. * * *

"Peter Anderson, the survivor, could not grant, bargain, sell and convey the property during his lifetime, according to the express terms of the will, if he acquired only a life estate. Under the statute, and also under the common-law rule of construction, Peter Anderson would take a fee-simple estate in the lands through the will. The will in terms devises that estate, and the statute would give him that estate. From the terms of the will the clear intention of the testator was to transfer a fee-simple estate to the survivor, and that clear intention must prevail, if the instrument is established as the will of Isabella Anderson."

The Arizona statute referred to in the above excerpt read as follows:

"Every estate in lands which shall hereafter be granted, conveyed or devised to one, although other words heretofore necessary at common law to transfer an estate in fee simple be not added, shall be deemed a fee simple, if a less estate be not limited by express words or do not appear to have been granted, conveyed or devised by construction or operation of law."

For several reasons, Anderson is not controlling here.

First, in the instant case, all of Mr. Shedd's property—real, personal, and mixed—was his "sole and separate property". In Anderson, all the property of the husband and wife was community property. The Supreme Court's opinion in that case bears internal evidence that this fact exerted an influence upon the thinking of that tribunal.

Let us glance at the facts in the Anderson case.

Isabella Anderson died childless on July 20, 1903. Peter Anderson, the husband, survived her. After the death of Isabella, Peter continued in the sole possession and control of all the property involved, until his death on August 5, 1911.

Now, under the community property law of Arizona, the spouses own their common property, and the wife's interest is equal to that of the husband's. Coe v. Winchester, 1934, 43 Ariz. 500, 33 P. 2d 286, 287. The wife has a "vested right" in the community property. Grimditch v. Grimditch, 1951, 71 Ariz. 198, 225 P.2d 489, 492.

The extent to which the community character of the property influenced the State Supreme Court's holding in *Anderson* is indicated by the following paragraph of the opinion, which the petitioner has neglected to quote:

"The instrument, considered as a whole, may be, and it is, both a *mutual* or *reciprocal* will of the parties, and a separate will of the survivor. That part of the instrument preceding the 'fourth' paragraph of the conditions of trust deals with the *community property* making testamentary disposition of the said property. That part of the instrument preceding the terms of the trust is in form an absolute deed from the husband to the wife, and from the wife to the husband. The property purported to be conveyed by the husband to the wife is different in description from the property purported to be conveyed by the wife to the husband, but a general description of 'all personal property and other real estate owned by' each party at the time of his or her death is added to the specific description of the real property in each instance, and, *all property owned being conceded to be community*

*property,* the difference in description is immaterial to the disposition of this case. The conveyance is declared to have been made 'for the disposition of all their property that *they or either of them* may own at the date of their death.' " 16 Ariz. at page 189, 141 P. at page 724. [Emphasis supplied.]

In the case before us, there was no mutuality or reciprocity in the will of Harrison Shedd. No community property was involved. The facts are simply different from those of *Anderson.*

Second, *Anderson* in no way involved a life estate plus a power of appointment, the law concerning which power we have already discussed at considerable length. *Anderson* is simply a fairly typical instance of a situation that occurs when a life tenant is given the full right to sell or expend the corpus of property. In that case, a remainder over is repugnant to the provisions relating to the life estate. No such situation exists here.

Third, *Anderson* was bottomed primarily upon the necessity of *consistency* in the interpretation of a legal document. This is spelled out for us in the following sentence:

"Peter Anderson, the survivor, could not grant, bargain, sell, and convey the property during his lifetime, according to the express terms of the will, *if he acquired only a life estate.*" [Emphasis supplied.]

The above observation by the Supreme Court of Arizona was apparently evoked by the fact that, in one part of the will, Peter Anderson is devised a "life rent", or life estate, in the property. Then in Paragraph Third, Peter, as the survivor, is given the remainder of the estate as " '[his] sole property' ", with " 'the power to dispose of any or all of said real estate and personal property and grant, bargain, sell and convey the same' ".

How can a person—so runs the Arizona argument—acquire only a life estate, and at the same time sell or otherwise dispose of the property?

There was a second inconsistency, in Paragraph Third itself, that does not seem to have been noticed either by the State Supreme Court or by counsel here. After being given the right to dispose of the property, he is *also*—and apparently at the same time—to *enjoy* it during his lifetime. The language " 'convey the same *and* enjoy the same during * * * his lifetime' " is, on its face, inconsistent. Probably the disjunctive *"or"* rather that the conjunctive *"and"* was intended.

Be that as it may, State Supreme Court thought that the various broad and sweeping terms of conveyance—not restricted to the power of sale—used in that case were *inconsistent* with the creation of only a life estate.

In the instant case, there is no such inconsistency. The wife is given the power to appoint, either by written instructions during her lifetime, or by will.

It is settled, of course, that the legal effect of the survivor's instructions or testament is determined by *state* law. But *before* the widow makes her election, there is a *vacuum,* so far as state law is concerned. And, as we have seen, that vacuum is filled, *at the instant of the husband's death,* by the Federal taxing power, which looks not to what the widow *may* do, but to what she has done, which here was exactly nothing. In the instant case, her period of inaction continued for an entire year. Is the Federal Government to be deprived of its fisc in the face of such inaction? If she can wait one year, she could wait two, three, five years before making her decision, all the while assuming that her husband's estate will be exempt from paying a tax on her "interest" in that estate in case she finally makes up her mind to "reach out her hand" and exercise her power of appointment to herself. How long must the tax collector cool his heels in the executor's anteroom?

*(b) The Hayward Case*

At the outset, we should point out that the petitioner has slightly misconceived the facts of the *Hayward* case. In its brief, it repeatedly refers to the "testatrix". Although there *was* a testatrix in that case, the will around which the controversy centered, and from which the petitioner quotes in its brief, was that of John Watson Thompson.

Briefly, the pertinent facts were these:

Theodora L. Hayward, hereinafter *Hayward*, a resident of Colorado, died in that State in 1939. Her will was admitted to probate in Colorado, and her executor applied to an Arizona Superior Court for ancillary letters, representing that at the time of her death she "owned an undivided one-half interest in the residue of the estate of * * * Thompson," at that time being probated in that court.

The Thompson will bequeathed the residue of his estate to Hayward and to another niece, Winifred Van Hagen, "in equal shares, and if either of them shall have died before my decease, without issue living at the time of my death, then her share shall pass to my said sister [and others], or the survivor or survivors of them, share and share alike."

Since both nieces outlived the testator, each inherited one-half of the residue of the Thompson estate. One of the questions raised was whether under the will Hayward's one-half interest died with her, and another was whether before her death she had voluntarily created a trust of her interest in the estate, with Van Hagen as the beneficiary. The trial court decided both questions in the negative, and directed that letters ancillary issue to Hayward's executor. The contesting heirs appealed.

Thompson's will contained the following closing statement:

"It is my wish, though this is not a restriction or a limitation upon the use and enjoyment of the legacies and bequests herein made, that my estate, after the payment of my debts, * * * shall be kept among the descendants of my late father and mother."

The Court inquired into the nature and extent of the interest Hayward acquired in the Arizona property under the Thompson will.

The appellants' contention was that when the will was properly construed it gave Hayward a fee in the Arizona property, subject to an executory devise vesting in the appellants immediately upon Hayward's death without issue. The Court pointed out that the implication in the will was clear that if either Hayward or Van Hagen should have living issue at the time of Thompson's death, although she be not then alive, her portion would pass to such living issue. But neither niece had died at the time of Thompson's death, and the contingency of living issue had failed; hence, by apt and direct language, the appellants were eliminated as devisees. They were to take Hayward's portion only if she should die before Thompson without issue living at the time of Thompson's death.

The appellants, however, further contended that they were made devisees by the final statement in Thompson's will, already quoted. They took the position that the testator used the word "wish" in a testamentary sense and not a precatory sense.

The court held against such a view, saying [57 Ariz. 51, 110 P.2d 960]:

"We think the rule stated in 19 American Jurisprudence 575, section 120, is the one controlling the situation here. It reads:

"'The general rule is well established that whenever an estate is given to a person generally or indefinitely with an unlimited power of disposition annexed, invariably the absolute fee is vested in the first taker, and an executory limitation over is repugnant and void. * * *'"

The Supreme Court of Arizona held that "the gift of the Arizona property to Theodora L. Hayward gave her a fee simple title to the property, with the right and power of disposition as she saw fit, and that the 'wish' expressed in the will was merely precatory and therefore did not have the effect of destroying the gift." 110 P.2d at page 960.

We have summarized Hayward at such length so as to make evident its utter inapplicability to the case at bar. There was no suggestion—much less outright mention—of a power of appointment. Even the appellants conceded that the will gave Hayward a fee, subject to an executory devise vesting in them immediately after Hayward's death without issue. The terms of the will plainly showed that Hayward received one-half of

Thompson's residual estate, subject only to the condition—which did not occur—that if she predeceased him without issue living at the time of his death, the property would go to others. In *Hayward*, there was no vacuum, no period during which her rights would be *in suspenso* until she made up her mind. Hayward's title came into being immediately, under the ancient French legal maxim, *"Le mort saisit le vif"* ("The dead invests the living"). In the present case, however, Mrs. Shedd's title, as we have seen, most assuredly did *not* come into being at the instant of her husband's death. At that instant, she acquired no "estate".

*Anderson* and *Hayward* simply are not in point.

■ Finally, even if we were to assume that *Anderson* and *Hayward* are in point—which we do not believe—they are not controlling here. The legislative history of § 812(e) indicates that Congress did not intend its tax-levying powers, under that section at least, to be subjected to the vagaries of state legislation. In Senate Report No. 1013, op. cit., 2 U.S.Code Cong.Serv.1948, p. 1229, we find the following:

"Subparagraph (B) is intended to be all encompassing with respect to various kinds of contingencies and conditions. Thus, it is immaterial whether the interest passing to the surviving spouse is considered as a vested interest subject to divestment or as a contingent interest. Subparagraph (B) applies whether the terms of the instrument or the theory of their application are conceived as creating a future interest which may fail to ripen or vest or as creating a present interest which may terminate."

Again, in the same report, *op. cit.*, we find the following, which, though dealing with a different situation, is suggestive of the general Congressional intent that local law should here be disregarded:

"If the decedent by his will bequeaths a terminable interest for which a deduction is not allowed and the surviving spouse takes in accordance with the will, the marital deduction is not allowed even though under the local law the interest which such spouse could have taken against the will was a fee interest for which a deduction would be allowed. Any theory that the interest which she could have taken under the local law did pass to her in such a case and was used by her to purchase the interest under the will is contrary to the intended application of this section." [Page 1233.]

5. *There Was No "Substantial Compliance" with § 812(e) (1) (F).*

The petitioner contends that, even assuming that only a power of appointment over property actually placed in trust was conferred upon Mrs. Shedd, the estate is nevertheless entitled to the marital deduction, under § 812(e) (1) (F), supra.

That section, it will be recalled, provides that if, under the terms of the trust the surviving spouse is entitled for life to *ALL* the income from the corpus of the trust, etc., the estate is entitled to the marital deduction.

The petitioner argues that "where a spouse receives two-thirds of the income for life from an *entire* residue and the power to appoint *one-half* of that residue, she has received all and in fact something more than the minimum that the law requires in order to entitle the estate to the marital deduction."

■ The Tax Court held that "an income interest in and a power of appointment over a part of the corpus of a single trust does not satisfy the requirements of section 812(e) (1) (F) as written, and therefore the deduction is not allowable."

We agree. Under the will and the first codicil Mrs. Shedd was entitled to *two-thirds* of the net income from the trust estate. Under the second codicil, she had a power of appointment over *one-half* of the corpus of the trust estate. The statute requires that the surviving spouse shall receive *all* the income from the corpus, with power to appoint the *entire* corpus free of the trust, in order

to entitle the estate to the marital deduction.

A difference of 33⅓% in one respect, and of 50% in another respect, does not come within the *de minimis* rule!

6. *The Decree of the Arizona Court, Awarding to Mrs. Shedd an Undivided One-Half Interest in the Residue of the Estate, Is Not Determinative of the Present Tax Question.*

■ The Superior Court of Maricopa County, Arizona, distributed one-half of the residue of the Shedd estate to Mrs. Shedd free of any trust. This distribution was made on April 18, 1951, or nearly a year and a half after the death of Mr. Shedd.

From that decree, the petitioner seeks to spell out a "construction" of the Second Codicil, supra that "is binding upon the United States".

We in no way question the correctness of the Arizona decree, *as of the date of which it speaks.* The State Court was not there considering a Federal tax problem. It was in no way passing upon the nature of the title, if any, that Mrs. Shedd took *as of the date of Mr. Shedd's death,* which, as we have seen, is the crucial time here.

On the contrary, the State Court's decree specifically and unequivocally recites that it is being made under Mr. Shedd's will and the codicils thereto, *"and in accordance with the exercise by Mary Redding Shedd of the power of appointment granted to her under the Second Codicil,"* etc. [Emphasis supplied]

We thus see that it was the "exercise" of the power, and not the testamentary *grant* thereof, that the Arizona Court considered determinative. On the other hand, we are interested in the quality of the title *bequeathed* by Mr. Shedd, *as it stood at the instant of his death.*

Nor can we agree with the petitioner that "Had the decree been based only upon the widow's exercise of her power of appointment, [the State Court] would have ordered, not distribution to the widow direct, but distribution to the trustee with instructions to deliver to the widow".

It is difficult to believe that the petitioner is serious in making this contention. We can see no practical difference between delivering parcel X to A for transmittal to B, and delivering to B direct.

The decree of the State Court in no way conflicts with the decision of the Tax Court, which, with the modification to be hereinafter noted, we affirm.

7. *The Respondent Concedes That Certain Adjustments Should Be Made in the Computation of the Estate Tax.*

In accordance with Rule 51 of the Rules of Practice of the Tax Court, 26 U.S.C.A. § 7453, a stipulation of facts was entered into by the parties wherein it was agreed that certain credits and deductions for expenses, including a reasonable deduction for attorney's fees, would be allowed in the computation to be entered under Rule 50 of the Tax Court. These adjustments were waived pending appeal. At the conclusion hereof, it was understood that such adjustments are to be allowed in the recomputation to be entered in accordance with the "findings" of this Court.

We therefore order that a recomputation be made under the rules of the Tax Court, in reduction of the deficiency, supra.

8. *Conclusion*

■ It is well settled that statutory exemptions from taxes of this kind should be strictly construed against the taxpayer, and are held applicable only to subject matter or beneficiaries clearly within their terms.

In 85 C.J.S., Taxation, § 1157, p. 965, the rule is thus succinctly stated:

"The power of exemption from an inheritance or a similar tax is an essential element of sovereignty. An exemption from such a tax is a matter of grace or privilege, and may not properly be claimed beyond the extent to which the lawmaking body has seen fit to allow it. Exemptions

are the exception, are not favored, and will not be presumed."

Even more terse is the summary of the Supreme Court's view on this question, as expressed by Mr. Justice Black, in Oklahoma Tax Commission v. United States, 1943, 319 U.S. 598, 606, 63 S.Ct. 1284, 1288, 87 L.Ed. 1612:

"This Court has repeatedly said that tax exemptions are not granted by implication."

Accordingly, we hold that the moment to which one must look to determine whether the surviving spouse's interest is terminable must be fixed, for Federal Estate Tax purposes, according to Federal law; that the determinative moment is that of the testator's death; that the two decisions of the Arizona Supreme Court relied upon by the petitioner are not in point; that there was no "substantial compliance" with the provision that if, under the terms of the trust, the surviving spouse is entitled for life to all the income from the corpus of the trust, etc., the estate is entitled to the marital deduction; that the decree of the Arizona Superior Court, granting Mrs. Shedd an undivided one-half interest in the residue of the estate, is not determinative here; and that the petitioner is entitled that certain credits and deductions should be made in the computation of the estate tax.

The case is therefore remanded to the Tax Court for the making of those adjustments. In all other respects, the decision of the Tax Court is

Affirmed.

DENMAN, Chief Judge (concurring in the result).

The entire long discussion of the question *when* the "nature" of a testamentary gift is fixed is by the mark. Everyone agrees that its "nature" is fixed by the testament itself at the time of the death of the testator. By the mark also is the discussion of Detroit Bank v. United

States, 317 U.S. 329, 63 S.Ct. 297, 87 L.Ed. 304, holding that the time when tax liens on testamentary gifts attach is on the death of the testator. Nor can it be assumed that the Detroit Bank case, decided on January 4, 1943, overrules sub silentio the case of Helvering v. Stuart, 317 U.S. 154, 63 S.Ct. 140, 87 L.Ed. 154, decided only several weeks earlier on November 14, 1942, holding that the state law determines the legal character of testamentary trust instruments.[1] The discussion of the disadvantages of having to consider state law to determine provisions of federal legislation well could have been written before Erie Ry. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188.

The question here is whether the taxing statute *on its face* completely controls the disposition of the case regardless of what the state law may be. I agree that the Estate is not entitled to the deduction claimed because the *specific* provision 26 U.S.C. § 812(e) (1) (F) excepts the testamentary half interest of Mrs. Shedd from the "general" provisions of Section 812(1) (A).

This clearly appears by placing the general and specific provisions (A) and (F) in juxtaposition as follows:

"(1) Allowance of marital deduction

"(A) In general. An amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate.

\* \* \* \* \* \*

"(F) Trust with power of appointment in surviving spouse. In the case of an interest in property passing from the decedent in trust, if under the terms of the trust his *surviving spouse is entitled for life to all the income from the corpus of*

---

1. Jerome v. United States, 1943, 318 U.S. 101, 104, 63 S.Ct. 483, 87 L.Ed. 640. Cf. Harris v. Commissioner, 1950, 340 U.S. 106, 71 S.Ct. 181, 95 L.Ed. 111; Rodgers v. United States, 5 Cir., 1955, 218 F.2d 760.

*the trust,* payable annually or at more frequent intervals, with power in the surviving spouse to appoint the entire corpus free of the trust (exercisable in favor of such surviving spouse, or of the estate of such surviving spouse, or in favor of either, whether or not in each case the power is exercisable in favor of others), and with no power in any other person to appoint any part of the corpus to any person other than the surviving spouse—

"(i) the interest so passing shall, *for the purposes of subparagraph (A),* be considered as passing to the surviving spouse, and * * *"
(Emphasis added.)

There could not be a case more certainly requiring the application of the doctrine expressio unius est exclusio alterius. Subparagraph (F) providing for a deduction only where the "surviving spouse is entitled for life to *All* the income from the corpus of the trust" would be meaningless if Mrs. Shedd's *half-interest* in the income is also deductible.