Estate of Evan E. Eubanks, Deceased, Florence I. Renshaw, Executrix v. Commissioner.
Estate of Evan E. Eubanks v. Comm'r
Docket No. 2323-66.
United States Tax Court
T.C. Memo 1967-189; 1967 Tax Ct. Memo LEXIS 71; 26 T.C.M. (CCH) 936; T.C.M. (RIA) 67189; September 29, 1967
John A. Dunkel, 37 W. Broad St., Columbus, Ohio, for the petitioner. Robert A. Roberts, for the respondent. TANNENWALD
*71 Memorandum Findings of Fact and Opinion TANNENWALD, Judge: Respondent determined a deficiency in the estate tax of petitioner's decedent in the amount of $9,932.71. After concession of various issues raised by the deficiency notice, the sole issue remaining is whether respondent properly disallowed one-half of the amount *72 on deposit in a joint and survivorship bank account in the names of decedent, his wife, and his daughter as not qualifying for the marital deduction under section 2056 of the Internal Revenue Code. [1]
Findings of Fact Some of the facts are stipulated and are found accordingly. On or about December 26, 1962, petitioner, Florence I. Renshaw, was duly appointed executrix of the Estate of Evan E. Eubanks, her father. Decedent, who had engaged in the general practice of law for over 60 years, died on December 8, 1962, survived by his wife, Alice C. Eubanks, and his daughter. At all times materially relevant herein, the decedent and his daughter were legal residents of Jackson, Ohio. On February 4, 1964, the estate tax return for the Estate of Evan E. Eubanks, deceased, was filed with the district director of internal revenue, Cincinnati, Ohio. On November 23, 1929, the decedent opened savings account No. XXXX with the Jackson Building, Loan and Savings Company, Jackson, Ohio. This account was in decedent's name and was used exclusively by him until May 29, 1959, at *73 which time the style of the account was changed to "E. E. Eubanks or Alice C. Eubanks or Florence I. Renshaw." At the time of the change, decedent was 87 years old and his wife was 84. The decedent, his wife, and his daughter signed their names to the following signature card: We, the undersigned, hereby subscribe for shares of running stock in THE JACKSON BUILDING, LOAN AND SAVINGS COMPANY, of Jackson, Ohio, the account of deposit on said stock to be kept in our joint names. We hereby order the said THE JACKSON BUILDING, LOAN AND SAVINGS COMPANY to pay all deposits, or any part thereof, deposited on said stock, to the order of either of us and this order to continue to be so payable notwithstanding the death or incapacity of either of us. /s/ Evan E. Eubanks OR /s/ Alice C. Eubanks OR /s/ Florence I. Renshaw Section 17 of the bylaws for the Jackson Building, Loan and Savings Company, which was in full force and effect on May 29, 1959, reads as follows: Section 17. Stock accounts, whether evidenced by certificates, pass books or otherwise, may be issued, carried and paid as joint and survivorship accounts, in the names of two or more persons, whether adults or minors, *74 when the joint owners have given to the Company a joint order in substance or effect as follows: We, the undersigned owners of joint stock account No…. in The Jackson Building, Loan and Savings Company of Jackson, Ohio, do hereby agree and jointly authorize and order said Company to pay any and all of the credits now or hereafter on said account, on the order of any one or more of us, both before, and notwithstanding the death or other incapacity of any one or more of us, and such payment shall be valid acquittance of said Company as against any one at any time concerned. The balance in account No. XXXX on May 29, 1959 was $38,040.70. On that date, decedent deposited an additional $12,000 to the account, this being the only deposit to the account after the change in designation. No deposits were ever made by Florence or Alice. Prior to 1959, the passbook to the account had been kept in decedent's office safe. In 1959, decedent's eyesight began to fail. Since decedent was confined to his home most of the time, the passbook was brought to the house. From that time on, Florence would take the passbook to have interest entered and to make withdrawals at the request of decedent. Between *75 May 29, 1959 and July 2, 1962, Florence made four such withdrawals, in the amounts of $3,500, $6,000, $4,000, and $4,000, respectively. On each of these occasions, the money withdrawn was turned over by Florence to decedent. No other withdrawals were made. On December 8, 1962, the date of decedent's death, account No. XXXX had a total balance, including accrued interest, of $39,898.07. After his death, the passbook to the account remained in the decedent's home. There was no further activity in the account until December 5, 1963, when a check was issued by the Jackson Building, Loan and Savings Company, payable in the amount of $40,696.03 to "E. E. Eubanks, or Alice C. Eubanks, or Florence I. Renshaw." This check, which closed out the balance in account No. XXXX, represented the following: Balance in account at December 8,
1962
$39,898.07
Dividend (interest) accrued from De-
cember 8, 1962 to December 5, 1963
797.96
Total
$40,696.03
The total proceeds of the above check were divided equally between Florence and her mother. On the estate tax return, the entire date-of-death balance of $39,898.07 was included in the gross estate and one-half thereof listed *76 in the Schedule M computation as qualifying for the marital deduction. Also included in the gross estate was $10,000 of life insurance payable outright to decedent's wife and a joint and survivorship account in the name of decedent and his daughter with a date-of-death balance of $107,728.37. The return showed an adjusted gross estate of $312,349.72, assets qualifying for the marital deduction of $172,031.55 (of which $149,990.39 was deducted), $12,368.94 of other deductions, and a taxable estate of $89,990.39 after deducting the $60,000 exemption. The will of Evan E. Eubanks, dated January 7, 1958 and duly admitted to probate, left his entire estate to his wife, Alice, except for a $1,000 bequest to a grandson. Opinion The narrow question we face herein is whether decedent's surviving spouse had a sufficient property interest in one-half the date-of-death balance in a joint and survivorship bank account in the names of decedent, the surviving spouse, and their daughter to qualify for the marital deduction under section 2056. [2] Essentially, this involves the question of whether she possessed a qualifying "terminable interest" in the property. *77 In resolving this question, we are mandated by the Supreme Court of the United States to determine the extent of the property interest of the surviving spouse by applying the law of Ohio. Commissioner v. Estate of Bosch, 387 U.S. 456 (1967). Our decision should be predicated on state law and the State's highest court is the best authority on its own law. If there be no decision by that court then the federal authorities must apply what they find to be the state law after giving "proper regard" to relevant rulings of other courts of the State. In this respect, it may be said to be, in effect, sitting as a state court. [Citation omitted.] [See 387 U.S. at p. 465.] At the outset, we note that we are not confronted with the usual questions involving the multiple ownership of bank accounts, viz., the right of one owner to take in the event of the death of another owner or the responsibility of the banking institution in making payment to one of two or more multiple owners. Rather, we must determine the inter sese rights of multiple owners who are both alive - in this case, the surviving spouse and the daughter. See Union Properties, Inc. v. Cleveland Trust Co., 152 Ohio St. 430, 89 N.E. 2d 638, 640 (1949). *78 The law of joint ownership has had a complex and troublesome history. See II American Law of Property (1952), secs. 6.1 et seq.; see also Havighurst, "Gifts of Bank Deposits," 14 N. Car. L. Rev. 129 (1935); Note, 53 Col. L. Rev. 103 (1953). Moreover, there is a paucity of case law on the obligations of joint tenants to account to each other for withdrawals during their joint lives. See Annotations, 77 A.L.R. 799 (1932), 161 A.L.R. 71 (1946), and 11 A.L.R. 3d 1465 (1967) and related annotations cited in the latter at p. 1468. Initially, we note that in Ohio there is no statutory joint tenancy; under common law, a technical joint tenancy is not recognized; and, where property is held by two or more people jointly without any designation as to survivorship, they are presumed to be tenants in common. In Re Hutchison's Estate, 120 Ohio St. 542, 166 N.E. 687 (1929). Nevertheless, parties may contract for a right of survivorship, and, if they clearly so express their intention, the right of survivorship will be recognized. Compare Cleveland Trust Co. v. Scobie, 114 Ohio St. 241, 151 N.E. 373 (1926), Bender v. Cleveland Trust Co., 123 Ohio St. 588, 176 N.E. 452 (1931), *79 and In Re Hutchison's Estate, supra; cf. Rhorbacker v. Citizens Bldg. Ass'n Co., 138 Ohio St. 273, 34 N.E. 2d 751 (1941); In Re Reiner's Estate, 106 N.E. 2d 94 (P. Ct., Hamilton Co., Ohio, 1952); see Alexander, "Joint and Survivorship Property," 20 Ohio L.J. 75 (1959). The Supreme Court of Ohio has not laid down a precise rule of law which would enable us readily to determine the rights of decedent's surviving spouse to the bank account in her name and the name of the daughter. Nevertheless, that court has prescribed certain guidelines for decision. In Union Properties, Inc. v. Cleveland Trust Co., supra (89 N.E. 2d at p. 641), that court stated: In our opinion, in controversies like the present one involving the deposit and arising during the joint lives of the depositors, the form of the deposit should not be treated as conclusive on the subject of joint ownership and the door should be opened to evidence that the deposit was in truth made and maintained on a different basis. In other words, the "realities of ownership" may be shown. More recently, in Fecteau v. Cleveland Trust Co., 171 Ohio St. 121, 167 N.E. 2d 890 (1960), *80 the Ohio Supreme Court stated (167 N.E. 2d at p. 893): Under the Ohio rule the creation of a joint and survivorship bank account is a contractual matter, and, where a contest arises as to the ownership of funds in an account, carried in the joint names of two people, and one of them has wholly withdrawn and appropriated such funds to his own use, such case is to be decided on its own facts. The form of the deposit is not conclusive, and the circumstance that by the terms of the deposit either person may withdraw the whole amount is not always dispositive of the issue of ownership. In applying these principles, the Ohio courts have shown a strong tendency to find that each multiple owner has an interest in the property which the other multiple owner must recognize. Thus, in Fecteau v. Cleveland Trust Co., supra, bank accounts were held in the names of two individuals with the notation "either may draw - balance at death of either, payable to the survivor." One of the owners, on June 27, 1952, withdrew the balance of these accounts while the other was seriously ill and unconscious. The latter died four days later. An heir brought an action alleging that *81 the withdrawals were unauthorized and requesting judgment in "a named sum" (the amount claimed is not disclosed) and directing that the money be paid over to the estate of the deceased. After holding that the complaint stated a good cause of action, the Ohio Supreme Court went on to state that, if the allegations of the complaint were proved, the ownership of the account should be determined in accordance with the "realities" concept enunciated in Union Properties, Inc. v. Cleveland Trust Co., supra.See 167 N.E. 2d at p. 893. In Re Estate of Schuh, 218 N.E. 2d 203 (P. Ct., Franklin Co., Ohio, 1966), involved the question of inheritance tax on a joint and survivorship account in the names of decedent, his wife and a daughter. The Probate Court ruled that each of the survivors succeeded to one-half of the account. In Re Markiewicz' Estate, 129 N.E. 2d 328 (P. Ct., Franklin Co., Ohio, 1955) involved two holders of a joint and survivorship bank account who died in a common disaster under circumstances which made it impossible to determine who was the survivor. The Probate Court held that the account should be shared equally by the *82 two estates. To be sure, both of these cases involved special situations. But the fact is that ownership was divided, a result consistent with the decided cases involving the rights of multiple owners inter sese and during their joint lives, where the Ohio courts have looked to the facts to determine the property interests involved. Fecteau v. Cleveland Trust Co., supra; Union Properties, Inc. v. Cleveland Trust Co., supra; cf. Abrams v. Nickel, 50 Ohio App. 500, 198 N.E. 887 (1935). Significantly, we have found no Ohio case which has dealt with the problem of ownership on a simplistic "first-come, first-served" basis. In Schwartz v. Sandusky County Savings & Loan Co., 65 Ohio App. 437, 30 N.E. 2d 556 (1939), heavily relied upon by respondent, one multiple holder of a joint and survivorship account in a savings and loan association made demand upon the bank for payment. Before payment was made, the assignee of the other holder also demanded payment. In an action brought by the multiple holder, who had made the first demand, against the savings and loan association, the other holder, and the assignee, the lower court held for the *83 assignee. In reversing this holding, the intermediate Ohio appellate court indicated that the prior demand of one holder could not be ignored but remarked that, if the other holder had, prior to that demand, "withdrawn the account and handed the money to [the assignee], he would have been within his rights as a joint depositor of the account." See 30 N.E. 2d at p. 558. We think that this language deals with the power of withdrawal as against the banking institution and does not, as respondent argues, determine that ownership, i.e., the right to retain without accountability after withdrawal, rests upon a "first-come, first-served" doctrine. Our interpretation in this regard is borne out by the fact that the appellate court did not direct judgment for the holder making the first demand but rather reversed and remanded "for further proceedings to determine the ownership of the account as between the joint depositors." [Emphasis added.] See 30 N.E. 2d at p. 558. Other Ohio cases relied upon by respondent involved questions as to the right of survivorship upon the death of one multiple owner and are therefore distinguishable. Cleveland Trust Co. v. Scobie, supra; *84 In Re Fulk's Estate, 136 Ohio St. 233, 24 N.E. 2d 1020 (1940); Bowerman v. Bowerman, 67 Ohio App. 425, 35 N.E. 2d 1012 (1941). Three significant elements of Ohio law emerges from the aforementioned cases: (1) a joint tenancy is normally presumed to be a tenancy in common, with the result that each tenant is the absolute owner of his proportionate interest; (2) the parties may contract out of the foregoing presumption, at least insofar as survivorship is concerned; and (3) the Ohio courts will look to all the facts and circumstances, including the intention of the parties, to determine the "realities of ownership." Against the foregoing background, we examine the facts herein. Decedent was an experienced lawyer in Ohio. For 30 years, the bank account in question was in decedent's name individually. When the designation of the account was changed, the arrangements with the bank specifically dealt only with the power of withdrawal as against the bank and with the rights of survivorship as among decedent, his wife, and his daughter. At the time of the change in designation, decedent had failing eyesight. He was 87 and his wife 84 years old. The only activity *85 in the account after the change of designation was one deposit of $12,000 by decedent and four withdrawals by the daughter aggregating $17,500, all of which were made at the direction of, and turned over to, decedent. The passbook at all times remained in decedent's home. Approximately one year after decedent's death the daughter took the passbook to the bank, closed the account, and divided the proceeds equally with her mother. [3] At decedent's death, he and his daughter held a joint and survivorship bank account of over $100,000, which is not involved herein. Decedent left his entire remaining estate, including life insurance, outright to his wife except for a $1,000 bequest to a grandson. *86 On these facts, it would not be unreasonable to conclude that (1) the decedent intended the full ownership to remain in himself until his death with such full ownership to vest in his wife thereafter; (2) because of the advanced ages of decedent and his wife, the daughter's function should be viewed simply as that of a convenient signatory; and (3) the daughter should be entitled at the death of the wife only to whatever decedent and his wife in their uncontrolled discretion chose to leave in the account. Such conclusions are consistent with decedent's testamentary dispositions, in which he left all his life insurance and the bulk of his estate, which was substantial, to his wife without restriction upon her as to use or disposition. There is no evidence that he was concerned about the financial situation of his daughter; in fact, the $100,000 bank account which he established in his and her names suggests that he considered that he had made ample provision for her during the period immediately following his death. In light of the foregoing, it is possible that the Ohio courts would determine that the wife, as against the daughter, was the owner of the entire account. It is not necessary, *87 however, for us to resolve this ultimate question, since petitioner has claimed the marital deduction for only one-half thereof. Respondent does not deny that the surviving spouse herein had the unrestricted right to make, use, and dispose of one-half of the account. His claim is that the daughter had also that right with respect to the same half and therefore the requirements of section 2056(b)(5) have not been met. Essentially, respondent rests his claim on the contention that the unrestricted power to withdraw coupled with the daughter's designated survivorship rights should be translated into a right to retain all amounts withdrawn without accountability to the surviving spouse. We do not think that the Ohio courts, applying the law of that state as outlined earlier in this opinion, would so hold. On the contrary, we think the Ohio courts, on the basis of all the facts and circumstances herein, would hold that the surviving spouse during her lifetime was the full and unrestricted owner of at least one-half of the account in question and would hold the daughter accountable to her therefor in the event of any excess withdrawals. Such being the case, the marital deduction with respect *88 to the account is allowable to the extent claimed by petitioner. Decision will be entered under Rule 50. Footnotes
1. Unless otherwise stated, all references herein are to the Internal Revenue Code of 1954.↩
2. SEC. 2056. BEQUESTS, ETC., TO SURVIVING SPOUSE. (a) Allowance of Marital Deduction. - For purposes of the tax imposed by section 2001, the value of the taxable estate shall, except as limited by subsections (b), (c), and (d), be determined by deducting from the value of the gross estate an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate. (b) Limitation in the Case of Life Estate or Other Terminable Interest. - (1) General rule. - Where, on the lapse of time, on the occurrence of an event or contingency, or on the failure of an event or contingency to occur, an interest passing to the surviving spouse will terminate or fail, no deduction shall be allowed under this section with respect to such interest - (A) if an interest in such property passes or has passed (for less than an adequate and full consideration in money or money's worth) from the decedent to any person other than such surviving spouse (or the estate of such spouse); and (B) if by reason of such passing such person (or his heirs or assigns) may possess or enjoy any part of such property after such termination or failure of the interest so passing to the surviving spouse; * * *
(5) Life estate with power of appointment in surviving spouse. - In the case of an interest in property passing from the decedent, if his surviving spouse is entitled for life to all the income from the entire interest, or all the income from a specific portion thereof, payable annually or at more frequent intervals, with power in the surviving spouse to appoint the entire interest, or such specific portion (exercisable in favor of such surviving spouse, or of the estate of such surviving spouse, or in favor of either, whether or not in each case the power is exercisable in favor of others), and with no power in any other person to appoint any part of the interest, or such specific portion, to any person other than the surviving spouse - (A) the interest or such portion thereof so passing shall, for purposes of subsection (a), be considered as passing to the surviving spouse, and (B) no part of the interest so passing shall, for purposes of paragraph (1)(A), be considered as passing to any person other than the surviving spouse. * * *
(e) Definition. - For purposes of this section, an interest in property shall be considered as passing from the decedent to any person if and only if - * * *
(5) such interest was, at the time of the decedent's death, held by such person and the decedent (or by them and any other person) in joint ownership with right of survivorship; * * *↩
3. We recognize that the determination herein must be made as of the date of decedent's death and with regard to the possibility rather than the probability or actuality of the interests of persons other than the surviving spouse. Eggleston v. Dudley, 257 F. 2d 398 (C.A. 3, 1958); Shedd's Estate v. Commissioner, 237 F. 2d 345 (C.A. 9, 1956), affg. 23 T.C. 41↩ (1954). Nevertheless, we think that the actuality of the division of the proceeds may be taken into account where, as is the case here, the intentions of the parties are to be considered in determining the ownership rights.