[Civil No. 3033.   Filed June 16, 1931.]

[300 Pac. 186.]

ERNESTYNE E. GOTTHELF, Appellant v. EDWARD J. GOTTHELF, Jr., Appellee.

Mr. Louis G. Hummel, for Appellant.

Mr. John B. Wright and Mr. William R. Misbaugh, for Appellee.

ROSS, J.—On July 19, 1929, the plaintiff, Ernestyne E. Gotthelf, filed a complaint for divorce from the defendant, Edward J. Gotthelf, Jr., in the superior court of Pima county, on the grounds of cruelty. In the complaint it was alleged that the issue of their marriage was Edward J. Gotthelf, III, aged 3 years, and that plaintiff was "a necessary and proper person to have the custody and control of said child"; that defendant was a practicing physician and surgeon capable and earning large sums of money, and that $250 per month was a reasonable allowance for the support and maintenance of plaintiff and said minor child, as permanent alimony. It was also alleged that there was no community property. Defendant filed an answer on the same day in which he specifically admitted the residence, marriage, the birth and age of Edward J. Gotthelf, III, the fitness of plaintiff to have his care and custody, and that there was no community property; did not deny and therefore admitted the charge of cruelty, also his ability to pay support and maintenance for plaintiff and the child as alleged.

On the same day the court heard the case and entered its decree as follows: (1) The plaintiff was granted an absolute divorce; and (2) awarded the custody and control of the minor child. (3) It was found there was no community property and that neither spouse had any right to the property, real or personal, then owned or subsequently acquired by the other. "(4) That defendant pay to plaintiff for the

support and maintenance of herself and said minor child the sum of two hundred fifty ($250.00) dollars on or before the 20th day of July, 1929, and a like sum on or before the 20th day of each month thereafter until the further order of this court.''

On May 13, 1930, the defendant filed his second amended petition for modification of the decree (the first petition having been filed on April 24th) in which he charged the plaintiff with leading a dissolute and corrupt life and neglecting properly to care for the minor child, the allegations in that respect being as follows:

''That she has been engaging in drinking parties; that she is frequently intoxicated, and frequents public dance halls, cafes and like places, under the influence of intoxicating liquor; that she associated with men of dissolute character, the names of some of said men being unknown to this defendant; that due to her habits and manner of living, she is neglecting to properly care for the minor child of these parties, often leaving the said minor child for long period of time, day and night, under the care and control of incompetent people.

''That on the 14th day of April, 1930, at the residence of Charles G. Miller, 1905 East 4th Street, Tucson, Arizona, the plaintiff committed adultery with one Bert Parker, a married man.

''That the plaintiff has become, and is, an unfit and improper person to retain the care and control of said child, and it is for the best interests of said child that its custody and control awarded under said decree of divorce to said plaintiff be taken from said plaintiff.

''That this defendant is informed and believes, and on such, alleges that the plaintiff threatens to move the said child from under the jurisdiction of this court, and this defendant fears that she may so remove the said child at any time unless restrained by order of this court.

''That it is for the best interests of said minor child that it be placed in the care, custody and control of a proper person or institution until further ordered by the court, and this petitioner alleges that

St. Joseph's Orphanage, of Tucson, Arizona, is a fit and proper institution in which to place said child to be cared for and educated until further order of the court; said child to be supported and maintained by this petitioner and both plaintiff and defendant given the right to visit said child at all proper times."

The prayer to this petition was: (1) That the care, control and custody of the child be taken from plaintiff and given to some disinterested person or institution, preferably St. Joseph's Orphanage of Tucson; (2) that defendant be relieved from the payment of any further sum or sums whatsoever to the plaintiff; (3) that an order be issued restraining the plaintiff from removing the child from Pima county.

On the same date (May 13th) in conformity with the motion of plaintiff, the defendant filed a "bill of particulars" in which is set out six different and separate acts of misconduct of the plaintiff, giving the dates, places, and parties.

The plaintiff filed a demurrer to the petition and the bill of particulars, or that portion thereof asking that defendant be relieved from the payment of any further sums to the plaintiff as maintenance and support money, asserting that the facts stated did not justify the granting of such relief. The same question was presented by a motion to strike. She also plead in bar of the right to change or modify the allowance for support and maintenance that said amount of $250 was settled upon by agreement between them, by which said agreement the defendant promised and undertook to pay her that amount monthly thereafter; that the agreement was made after they had separated and when it was certain that reconciliation was hopeless, and was solely for the purpose of settling property rights of the parties and making provision for the support of plaintiff and her child. Plaintiff also filed a verified answer to all the charges of misconduct set out against her in the sec-

ond amended petition and bill of particulars, denying, explaining or justifying her conduct.

The court heard the evidence introduced by both parties, and on the twenty-ninth day of May, 1930, found "in favor of the defendant and that each and all of the allegations set forth in his petition and bill of particulars in the main are true and that the plaintiff is an unfit person to have the care and custody of said child, and that the maintenance and support money heretofore and in the original decree awarded her be modified as hereinafter stated."

The decree then awards the custody of Edward J. Gotthelf, III, to St. Joseph's Orphanage of Tucson, and directs that he remain there until a suitable private home is found which meets the approval of the court, and that both plaintiff and defendant be permitted to visit the child at all reasonable times; that the defendant pay to the plaintiff on the twentieth day of June, July, and August, 1930, the sum of $175 for each of said months, and thereafter on the twentieth day of each month the sum of $50 until the further order of the court.

Plaintiff made a motion for a new trial, which was denied. She appeals from this order and also from the judgment modifying the original decree.

The assignments raise questions both of fact and of law. Without trying to follow these assignments by number and separately, we will consider the points raised by them in a general way. Judging from the record, the battle waged in the lower court over the right and power of that court to change the allowance for support and maintenance and the custody of the child from the mother over to the St. Joseph's Orphanage of Tucson was both warm and bitter. This is evidenced not only from the briefs but from the proceedings in the course of the trial.

The effort was to secure the modification in vital features of a judgment and decree, solemnly made and

entered, settling the marriage status of plaintiff and defendant, as also their rights to the custody and control of their child—issues likely to engender very bitter feelings. Granting the power of the court to modify its judgment and decree in the two respects mentioned, it is at once manifest that such power should be exercised only for the most cogent reasons. The charges against the plaintiff were of a very serious and damaging nature. They involved her mental and moral fitness to have the care and control of her own child. If from being ''a necessary and proper person to have the custody and control'' of her child, as found in the decree, she had subsequently thereto acquired habits making her an improper person to have his custody and control, the terms of the decree should be modified, not to gratify the father or to punish the mother, but for the protection and good of the child. It was to meet this and similar situations that the legislature incorporated into our laws (Revised Code of 1928) this provision:

''§ 2188. *Modification of Judgment Affecting Alimony and Children.* The court may from time to time after the entry of final decree, on petition of either party, amend, revise and alter such portions of the decree as relate to the payment of money for the support and maintenance of the wife or the expenses of the proceedings, as may be just, and amend, change or alter any provision therein respecting the care, custody or maintenance of the children of the parties as the circumstances of the parents and the welfare of the children may require.''

The welfare of the child is sufficient consideration for changing its custody. It may be questioned by some if it is ever for the good of a child of so tender years to take him from his natural mother and give him over to an institution's care and custody. It is, however, a biological fact that the first four or five years of a child's life are his most impressionable years, and, if that be true, they are the years that his

little body and mind need most careful nurture and protection. But plaintiff says the charges of misconduct on her part were not proven and the court's finding that they were is not supported by the evidence. It would serve no useful purpose to set out in detail or substance what the evidence is. We have carefully read that portion called to our attention by the briefs, and much more, and have come to the conclusion that the court's finding, to the effect "that each and all of the allegations set forth in his (defendant's) petition and bill of particulars in the main are true," is not only sustained by the evidence, but that the evidence would have justified a much stronger and more direct indictment of plaintiff's conduct. We think the court must have worded its findings thus mildly from other motives than doubt of the probative force of the evidence to support the charges in the petition and bill of particulars. The action of the court under the changed circumstances, in taking the child from the plaintiff and placing him with the institution named until a suitable home could be found for him, it seems to us was justified and authorized by law. In a contest of this kind it is generally a very difficult, not to say unpleasant, task to decide that a natural parent ought not to have his own child, and it may be granted it is not done unless the facts and circumstances impel it. The trial judge is in the best position to determine what is best for the child, and, unless it appears pretty clearly, that he has mistaken or ignored the evidence, or failed properly to evaluate it, we will not disturb his decision on that vital question. *McFadden* v. *McFadden,* 22 Ariz. 246, 196 Pac. 452; *Bradstreet* v. *Bradstreet,* 34 Ariz. 340, 271 Pac. 717.

Plaintiff, however, insists the allowance for support and maintenance was agreed to and incorporated into the judgment and decree by consent and in pursuance of a property settlement agreement previously entered

into in good faith by plaintiff and defendant, and that for those reasons the court was without power to change or modify the allowance. If in fact such were the agreement, there is one line of cases (the minority) that holds with plaintiff's contention, but the majority rule is that, where a court has the general power to modify a decree for alimony or support, such as is found in our section 2188, *supra,* the exercise of that power is not affected by the fact that the decree is based on an agreement entered into by the parties to the action. The cases for both rules are collated in a note to *Dickey* v. *Dickey* in 58 A. L. R. 639 (154 Md. 675, 58 A. L. R. 634, 141 Atl. 387). The facts here do not require us to take sides on the question. There is no allegation in the complaint of any such agreement nor any admission in the answer to that effect. The allowance was asked for in the complaint on defendant's ability to pay it and not on his contract to pay it. The judgment itself makes the allowance of $250 per month for the support and maintenance of the plaintiff and child ''until the further order of this court.'' There is no question but that the judgment was entered in accordance with the wishes of the plaintiff nor that the court properly retained jurisdiction to change or modify the allowance. Plaintiff testified that the agreement was that she should have for the support of herself and child $250 per month, and that if she should remarry the decree should be modified to allow her only $75 per month for the support of her child. The defendant denies that there was any such agreement. It would seem that, if there had been a definite contract as to the permanent alimony to be paid the plaintiff, it would have been noticed in the decree. The allowance is to the plaintiff and the child—no segregation. Whatever may be said of the right of the parties to contract as to alimony so as to bind the court, it is quite certain that they could not by their contracts as

to support and maintenance of the child bind the court. At all events, it was a question of fact as to whether there was such an agreement as claimed by the plaintiff, and the court evidently found against her. We accordingly think the facts stated in the petition for a modification of the allowance were sufficient if established to authorize such modification, and that the court was right in overruling plaintiff's demurrer thereto, as also her motion to strike.

Plaintiff wanted to prove by witnesses that defendant had stated just before or about the time of the divorce that she was a good mother to the child and that he had no fear that she would not take good care of him. Upon objection she was not permitted to make such proof. The ruling is complained of as erroneous. Such proof would have been merely cumulative. Defendant had admitted by his answer to plaintiff's complaint that she was "a necessary and proper person to have the custody and control of the child." There was no effort to repudiate or question this admission. It is of delinquencies on plaintiff's part after the divorce that complaint was made and proof offered. The ruling was not erroneous.

Complaint is made of the court's refusal to grant plaintiff a new trial upon the ground, among others, that "the action of the court in considering unfiled affidavits prejudiced the plaintiff's cause and denied her a fair trial." It appears that Honorable FRED W. FICKETT, who tried the case, when the petition for modification of decree was presented to him originally, expressed some doubt of the sufficiency of the allegation therein based upon information and belief, and thereupon he was shown by one of the then attorneys for defendant the affidavits of Charles Miller, C. R. Dusenbury, Mrs. Louise Ezekiels, a Mrs. De Wolf, and a Miss Simpson, whereupon he directed the issuance of writ to plaintiff to show cause. Before the trial, according to the affidavit of Judge FICKETT,

he told one of plaintiff's attorneys of seeing and reading the affidavits. The plaintiff therefore had knowledge when she went to trial that the judge had seen affidavits that were not on file, and if she desired to disqualify him on the grounds of prejudice or bias she had that opportunity. It also appears that all of the persons whose affidavits Judge FICKETT saw, except Mrs. De Wolf, were witnesses in the trial and were examined and cross-examined by the plaintiff and defendant as to what they knew. The judge, from the record, did not keep the fact that he had seen the affidavits a secret, but boldly and frankly told opposing counsel, and, while we think the affidavits should have been filed in the case, we are satisfied that plaintiff's rights were not prejudiced by their not being filed, but that she had a fair and impartial trial.

The judgment is affirmed.

McALISTER, C. J., and LOCKWOOD, J., concur.