277 P.2d 261

**Charles Steelman DAVIS, Appellant,**

**v.**

**Jacqueline Hooker DAVIS, Appellee.**

No. 5867.

Supreme Court of Arizona.

Nov. 29, 1954.

Chester J. Peterson, Safford, for appellant.

Gentry & Gentry and J. F. McNulty, Jr., Bisbee, for appellee.

LA PRADE, Justice.

The facts leading to this appeal are these: Charles Steelman Davis and his wife, Jacqueline Hooker Davis, were granted an Arizona divorce on September 19, 1949. Under the provisions of the decree the custody of their minor child, Charles Hooker Davis, was granted to the mother for ten months of each year. Mr. Davis was granted custody for the months of July and August.

On August 3, 1953, the mother, appellee herein, petitioned the court for an order modifying the custody provisions of the original divorce decree. It was alleged that the conditions under which the boy lived with his father detrimentally affected his health, safety and general welfare. A hearing was held after which the court ruled in favor of the appellee. On August 24, 1953 the trial court ordered that the custody provisions be modified to allow the father custody of the boy for only two weeks of each year, rather than the two-month period originally provided.

Mr. Davis appeals from this order, asserting that the trial court abused its discretionary power to modify the original decree. It is asserted that there was no showing made, by the moving party, of a substantial change of conditions since the date of the divorce in 1949 and the date of the trial court's modification.

Under our statute, section 27–811, A.C.A.1939, the court retains con-

tinuing jurisdiction to modify the custody provisions of minor children in a divorce proceeding. Grimditch v. Grimditch, 1951, 71 Ariz. 198, 225 P.2d 489. This power to modify the decree is to be exercised only when cogent reasons are shown. Gotthelf v. Gotthelf, 1931, 38 Ariz. 369, 300 P. 186. Such reasons must constitute facts or conditions unknown at the time of the original decree, or occurring subsequent to the decree. Burk v. Burk, 1949, 68 Ariz. 305, 205 P.2d 583. These substantial conditions must detrimentally affect the child whose welfare is the paramount consideration at all times. Cone v. Righetti, 1952, 73 Ariz. 271, 240 P.2d 541. But all changes in the activities or environment of a minor will not necessarily constitute a basis for a modification unless shown to be substantial and detrimental.

The trial court specified three reasons for its order. It was stated that while the boy was in the custody of his father, at the latter's beach home in Manhattan Beach, California, he received inadequate supervision, was exposed to hazards, and that the boy would be better off with his mother rather than in the father's bachelor residence.

The minor boy, age nine, came to his father in California on July 1, 1953. During the time the boy was in his father's custody the latter was employed as a metallurgist. Mr. Davis left his home for work each morning at approximately 7:15 a. m. after making breakfast for the boy and himself. He returned in the afternoons at approximately 4:30 p. m. On his return from work the father generally would play with the boy on the beach. Later they would have dinner together and attend some exhibition of interest to the boy, such as the aquarium or car races. It appears that the conditions relied upon by appellee occurred between the hours of 7:15 a. m. and 4:30 p. m. During these hours Mr. Davis had arranged for a neighbor, Mrs. Denn, to care for the boy. Both parties agreed that Mrs. Denn was a woman of excellent character. She is the mother of two children, a girl age twelve and a boy age seven. Her son and Charles often played together. The main argument below was whether Mrs. Denn adequately exercised her powers of supervision over Charles. It was shown that she permitted Charles and her son to fish and swim in areas out of her sight and immediate control.

While Mrs. Denn offered her services to Mr. Davis gratuitously the father furnished her with funds to cover the expense of preparing lunch for Charles. It developed that both boys, Charles and Mrs. Denn's son, desired to eat lunch at a small restaurant near the beach. Mrs. Denn permitted this and gave the boys lunch money each day. The fact that the boy ate lunch at a commercial establishment rather than in a home is uninformative in itself. The father testified that he investigated the quality of food served at this

place and also checked to see that the boy, Charles, was not buying too much candy. In his opinion the boy was receiving good food. Appellee introduced no evidence designed to show that the cafe was unfit or that the food was of poor quality. In the absence of such showing we cannot say that Mrs. Denn's indulgence in the boys' wishes created a detriment to Charles' health and welfare or demonstrates that he received inadequate supervision.

One of the hazards specified by the trial court was the fact that Charles was permitted to go fishing from a pier extending out into the ocean. It was estimated that the depth of the water beneath this pier was thirty feet. But it was also disclosed that this pier was occupied by many people fishing, most of whom were adults. It was also brought out that a life guard station was located at the land end of the pier. No evidence was submitted indicating that this pier created an unusual risk.

Another hazard stated by the court was that the boy was permitted to swim and play with a surf board on the beach. Again, there was no evidence that the beach was unusually dangerous or desolate. Testimony was given to the effect that the beach area was occupied by many people and patrolled by a very competent life guard system.

There can be no doubt that the trial court was correct in stating that the boy's activities subjected him to certain hazards from the water. But all risk is not unreasonable, it is a question of degree. Neither Charles, nor his younger companion, were permitted to wander in areas which may be characterized as treacherous or remote from assistance in the event of an emergency. Charles had been to the beach area for the previous three summers. On his mother's Arizona ranch he had received some additional experience in the water. The beach was no novelty with which he was unfamiliar, nor was Charles' judgment unusually poor. The Pinkerton agent hired by the mother to observe the activities of the boy testified that he did nothing foolish in the three-day period in which he was observed, and that in her opinion he was an intelligent nine-year-old boy. This conclusion was tacitly confirmed by the conduct of Mrs. Denn who permitted her younger boy, age seven, to accompany Charles on their ventures. The reasonable conditions of life do not insulate children from all possible hazards, but such hazards of life are not necessarily substantial reasons which would justify a modification of a custody decree. If the conditions under which Charles occupied his time while with his father have differed from those at the time of the original decree it appears to be merely the reflection of his growth and consequent new abilities and interests. The fact that the modification decree permitted the boy to remain with the father for a period of two weeks in the environment complained of

saps the finding, that the child was subjected to unreasonable hazards and inadequate supervision, of its potency. We fail to find evidence that the child was inadequately supervised or was subjected to risks unreasonable for a normal nine-year-old child, and find no basis in fact for the court's order modifying the original divorce decree.

■ The final basis for the court's order was that it would be better for Charles to live with his mother at her home rather than in his father's bachelor residence. It is not argued that the physical conditions of the father's beach home were in any manner unfit, and we assume the trial court referred to the fact that at appellee's home in Arizona there are two adults present, one remaining at hand through most of the day. We cannot agree with this view. Mr. Davis became a single man upon the issuance of the original decree and has so remained. There has been no change in this respect. That Mrs. Davis has remarried does not automatically mean that Mr. Davis' bachelor residence is unfit. A showing of unfitness must be made—which we fail to find. The original decree contemplated that the child would be in the custody of the father as an unmarried man during the summer vacation period. The presumption is that the original decree is reasonable until the contrary is proven. Burk v. Burk, supra. In the absence of such proof the original decree must stand. We hold that the trial

court's order modifying the original custody provisions of the divorce decree was erroneous. Other errors assigned by appellant need not be considered in view of our holding.

The judgment is reversed.

PHELPS, C. J., and STANFORD, UDALL and WINDES, JJ., concur.

WINDES, Justice (specially concurring).

A nine-year-old boy was allowed unattended to play and swim in the surf and fish from a pier over the ocean where the water was approximately 30 feet in depth. This was a condition that did not exist at the time of the rendition of the original decree. Exposure of the child to the hazards incident to this practice was the only possible changed condition. Consequently, to authorize the amendment of the decree, the court must have necessarily decided that such exposure was not for the best interests and proper protection of the infant. The majority correctly states that there was no doubt that the boy's activities subjected him to certain hazards and then proceeds to at least partially base the decision upon the ground that this was a reasonable hazard. With this I cannot agree because whether the risk was reasonable or unreasonable under these conditions is a matter that the law permits the trial court to decide. It is a matter concerning which judicial minds might well disagree. Under such circum-

stances the question is not whether the judges of this court would have made an original like ruling, but whether a judicial mind, in view of the law and the circumstances, could have made the ruling without exceeding the bounds of reason. We cannot substitute our discretion for that of the trial judge. If there be grounds for disagreement, the law does not permit us to disturb the trial court's decision. 5 C.J.S., Appeal and Error, § 1583(b), page 476; F. M. Slagle & Co. v. Bushnell, 70 S.D. 250, 16 N.W.2d 914, 156 A.L.R. 1070.

Many parents would not expose their child to this danger unattended; others less cautions probably would, thus demonstrating that there is ample grounds for a trial court to decide either that it was or was not an unreasonable risk and we under the law would have no right to disturb such decision on the basis that the trial court abused its discretion.

In the instant case where the trial court did go beyond the bounds of reason was in the field of inconsistency. The effect of the trial judge's decision was that it was an unreasonable risk to which the child's welfare demanded he not be subjected for a period of two months, but was a reasonable risk to which he could be subjected for two weeks of each year. The latter finding neutralizes the former and thereby robs the decision of any reasonable basis. This is the reason and only sound legal reason upon which the trial court can and should be reversed.

For this reason I concur in the result.