NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

BRIAHNA TESSLER, *Petitioner/Appellant/Cross-Appellee*,

*v.*

PROGRESSIVE PREFERRED INSURANCE COMPANY,
*Respondent/Appellee/Cross-Appellant.*

No. 1 CA-CV 14-0397
FILED 9-24-2015

Appeal from the Superior Court in Maricopa County
No.  CV2013-011613
The Honorable John Christian Rea, Judge

**AFFIRMED**

COUNSEL

Law Office of Larry A. Zier P.C., Scottsdale
By Larry A. Zier
*Counsel for Petitioner/Appellant/Cross-Appellee*

Law Offices of Collin T. Welch, Phoenix
By Collin T. Welch
*Counsel for Respondent/Appellee/Cross-Appellant*

---

**MEMORANDUM DECISION**

---

Presiding Judge Kenton D. Jones delivered the decision of the Court, in which Judge Samuel A. Thumma and Judge Peter B. Swann joined.

---

**J O N E S**, Judge:

**¶1**        Briahna Tessler appeals from the trial court's order denying her motion to vacate, amend, or set aside an arbitration decision awarding her $7,500 in damages for injuries sustained in a car accident. Tessler's car insurance carrier, Progressive Preferred Insurance Company (Progressive), cross-appeals the trial court's order denying its request for an award of attorneys' fees and costs. For the following reasons, we affirm.

### FACTS[1] AND PROCEDURAL HISTORY

**¶2**        In October 2008, Tessler was involved in an accident involving two cars which allegedly injured her right knee. The adverse driver conceded liability, and Tessler made a claim of $15,000, the full amount of the adverse driver's insurance policy coverage, as compensation for her injuries. Contending she had not been fully compensated, Tessler made an underinsured motorist claim under her own insurance policy with Progressive alleging total medical damages of $25,524.59.

**¶3**        Progressive agreed to cover the costs of Tessler's emergency room treatment and follow-up visit with her primary care physician but denied that the other medical treatment, including knee surgery, was causally related given Tessler's pre-existing injuries. Pursuant to the controlling arbitration provision in the insurance contract, Tessler and Progressive submitted the dispute to arbitration.

**¶4**        The arbitration was held before a three-person panel in May 2013 but was apparently not recorded in any fashion. Because the

---

[1]        We view the facts in the light most favorable to upholding the trial court's confirmation of an arbitration award. *Park Imperial, Inc. v. E.L. Farmer Constr. Co.*, 9 Ariz. App. 511, 513-14 (1969). Because the hearing was not recorded or transcribed, we rely on the facts set forth in the arbitration decision and other documents filed during the arbitration and trial court proceedings.

proceeding was not recorded, the precise evidence presented to the panel is not clear. However, the record on appeal reveals the evidence presented at the arbitration included testimony by hired expert Dr. Jeffrey Becker, deposition testimony by Tessler's treating orthopedist Dr. Michael Steingart, and an independent medical examination report by hired expert Dr. Michael Domer.

**Dr. Becker's Testimony[2]**

**¶5** Dr. Becker, a neurohospitalist,[3] apparently appeared at the arbitration telephonically and testified as an expert witness to support Tessler's claims that her knee injury was attributable to the car accident, and her subsequent treatment, including the knee surgery, was reasonable and necessary. Progressive objected based on Dr. Becker's personal relationship with Tessler's counsel and his incomplete review of Tessler's medical records, but the arbitrators allowed him to testify. Dr. Becker ultimately concluded, to "a degree of medical certainty," that Tessler's knee injuries were caused by the car accident and her medical treatment, including surgery, was reasonable and necessary.

---

[2] The parties did not submit any written report or testimony presented at the arbitration by Dr. Becker. Tessler's pre-hearing arbitration statement indicates Dr. Becker was expected to testify but Progressive has not referenced Dr. Becker's testimony, nor did the trial court ever make reference to that testimony. An affidavit was signed and sworn to by Dr. Becker stating he testified in support of Tessler's claim at the arbitration, but the affidavit was signed in August 2013, about three months after the arbitration concluded. Only Tessler refers to Dr. Becker's testimony, referencing it in both her petition to the trial court and opening brief on appeal.

[3] A neurohospitalist is a physician "dedicated to providing and improving inpatient neurologic care. . . . Neurohospitalists evaluate and treat a multitude of conditions including altered mental status, acute stroke, seizure disorders, nervous system cancer, headaches, and neuromuscular respiratory failure." Kevin M. Barrett & William D. Freeman, *Emerging Subspecialties in Neurology: Neurohospitalist*, 74 Neurology e9, e9 (Mitchell S.V. Elkind, ed., 2010), *available at* http://www.neurology.org/content/74/2/e9.short. They may also "diagnose and comanage patients with critical illness polyneuropathy/myopathy, coma, complications of solid-organ transplantation, or increased intracranial pressure." *Id.*

**Dr. Steingart's Deposition**

¶6        Dr. Steingart, an orthopedic surgeon, performed Tessler's knee surgery.  His deposition testimony revealed he first examined Tessler in 2009.  At that time, she reported she began experiencing pain in her right knee more than two years prior, after she had a fall.  Although it is unclear when Dr. Steingart learned of the car accident, he diagnosed Tessler with synovitis which "could" have been caused by the accident.  However, he was unable or unwilling to conclude with any degree of certainty that Tessler's knee injury was caused by the accident.

**Dr. Domer's Report**

¶7        Dr. Domer, an orthopedic surgeon hired by Progressive, completed an independent examination of Tessler and reviewed her medical records.  In his report, Dr. Domer noted that while Tessler complained of some pain in both her knees in the emergency room immediately following the accident, she was still "ambulating normally on them."  Dr. Domer also identified a record of an MRI of Tessler's right knee, conducted in May 2007 after a "slip and fall at school."  Tessler thereafter reported the slip and fall as a cause of her persistent knee pain to her doctors, even after the car accident.  In fact, Dr. Domer identified a medical form signed by Tessler after the car accident, wherein she indicated her knee pain began after her 2007 slip and fall, but made no mention of the car accident.

¶8        Based on his review, Dr. Domer concluded Tessler suffered from a patella-femoral mal-alignment, a condition pre-existing the car accident and the slip and fall.  He reported that neither the car accident nor her prior slip and fall would have caused more than a "transient increase" in her pain.  Although Dr. Domer acknowledged Tessler's knee injury "could be said to have occurred to a reasonable degree of medical probability as a direct result of her motor vehicle accident," his report indicates he did not agree with that conclusion.

¶9        Following the arbitration, Tessler was awarded $7,500 in a two-to-one decision. The dissenting arbitrator requested reconsideration of the matter, and after some discussion, reconsideration was denied by a two-to-one vote.[4]   The decision effectively awarded Tessler nothing from

_____

[4]        To support her position, Tessler relies on an email from the dissenting arbitrator who raised concerns about the majority decision.

Progressive's underinsured coverage because the $7,500 award represented the panel's determination of the full value of Tessler's claim which could be wholly satisfied by the limits of the other driver's insurance policy.

**¶10** Tessler filed a petition in the trial court to set aside, vacate, or amend the arbitration award. The court denied Tessler's motion, and Progressive filed a motion for attorneys' fees and costs incurred during the confirmation proceedings, which was also denied. Tessler timely appealed, and Progressive timely cross-appealed. We have jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) sections 12-120.21(A)(1)[5] and -2101(A)(1).

## DISCUSSION

I.     **The Trial Court Did Not Abuse its Discretion in Denying Tessler's Petition to Set Aside, Vacate, or Amend the Arbitration Award.**

**¶11** Tessler argues the trial court erred in denying her motion to vacate, amend, or set aside the arbitration award. When considering the trial court's order confirming an arbitration award, we view the trial court's order in the light most favorable to upholding the decision and will affirm unless the court abused its discretion. *Atreus Comtys. Grp. of Ariz. v. Stardust Dev., Inc.*, 229 Ariz. 503, 506, ¶ 13 (App. 2012) (citing *Brake Masters Sys., Inc. v. Gabbay*, 206 Ariz. 360, 364 n.3, ¶ 12 (App. 2003), and *Park Imperial*, 9 Ariz. App. at 513-14). However, the interpretation of statutes is an issue of law which we review *de novo*. *Hahn v. Indus. Comm'n*, 227 Ariz. 72, 74, ¶ 5 (App. 2011) (citing *State Comp. Fund v. Superior Court (Hauser)*, 190 Ariz. 371, 374-75 (App. 1997)).

**¶12** As Tessler correctly asserts, "judicial review of an arbitration award is severely limited by statute." *Atreus*, 229 Ariz. at 506, ¶ 13 (citing *Einhorn v. Valley Med. Specialists, P.C.*, 172 Ariz. 571, 572-73 (App. 1992)). The limited grounds for challenging an arbitration award in an insurance context are codified at A.R.S. § 12-1512(A), within Arizona's Uniform

_____

However, this email is not part of the record on appeal, and we do not consider it. *State v. Schackart*, 190 Ariz. 238, 247 (1997) ("Because our court does not act as a fact-finder, we generally do not consider materials that are outside the record on appeal."); ARCAP 11(a) (governing composition of record on appeal).

5     Absent material revisions from the relevant date, we cite a statute's current version.

Arbitration Act, A.R.S. §§ 12-1501 through -1518.[6] *See also Hirt v. Hervey*, 118 Ariz. 543, 545 (App. 1978) ("[T]he grounds for attack of an arbitration award are codified in A.R.S. § 12-1512(A)."). Pursuant to this statute, the trial court must decline to enter judgment upon an arbitration award if the arbitrators "refused to hear evidence material to the controversy." A.R.S. § 12-1512(A)(4). Tessler, as the challenging party, bears the burden of proving sufficient grounds to vacate the arbitration award. *See Fisher ex rel. Fisher v. Nat'l Gen. Ins. Co.*, 192 Ariz. 366, 369, ¶ 12 (App. 1998) (citing *Wages v. Smith Barney Harris Upham & Co.*, 188 Ariz. 525, 530 (App. 1997)).

¶13          Tessler asserts the arbitrators "refused to hear evidence material to the controversy" by ignoring, omitting, or rejecting "undisputed and uncontroverted evidence" that her knee injury was caused by the car accident. The record reveals otherwise. Although an arbitration award which completely disregards undisputed and uncontroverted evidence might present sufficient grounds for challenging the award, *cf. Mead v. Am. Smelting & Refining Co.*, 90 Ariz. 32, 38 (1961) (setting aside award where "the [Industrial] Commission arbitrarily disregards the only reasonable inference"), the evidence of causation in this case was anything but undisputed or uncontroverted. Tessler's expert, Dr. Becker, was the *only* medical expert who explicitly supported Tessler's claim. Dr. Steingart was unable to conclude as to the cause of Tessler's knee injury. And, Progressive's expert, Dr. Domer unequivocally reported Tessler's knee injury did not result from the car accident but, rather, resulted from a pre-existing condition.

¶14          This evidence is clearly in conflict and gives rise to a number of reasonable inferences regarding causation and the existence of a prior injury, both questions of fact which Tessler concedes must be resolved by the arbitrators. *See New Pueblo Constructors, Inc. v. Lake Patagonia Recreation Ass'n*, 12 Ariz. App. 13, 18 (App. 1970) (acknowledging that arbitration agreements may grant arbitrators "full power to decide both questions of law and fact") (citing *Funk v. Funk*, 6 Ariz. App. 527, 530 (App. 1967)); *Verdex Steel & Constr. Co. v. Bd. of Supervisors, Maricopa Cnty.*, 19 Ariz. App. 547, 552

---

[6]          Although Tessler also relies on the provisions of A.R.S. § 12-3023 for grounds upon which an arbitration award can be challenged, the Revised Uniform Arbitration Act provides that "[b]eginning January 1, 2011 this chapter shall not apply to an agreement to arbitrate any existing or subsequent controversy . . . contained in a contract of insurance." A.R.S. § 12-3003(B)(2). Because the parties' agreement to arbitrate was contained within an insurance contract executed after the subject date, only the provisions of the Uniform Arbitration Act apply here.

(App. 1973) ("Even though a court reviewing the award of a board of arbitration might consider some rulings on questions of law to be error, the rulings so made are binding subject only to the limited grounds for review set forth in A.R.S. § 12-1512.").

**¶15** Even if all the evidence conclusively proved causation, we would remain reluctant to find reversible error because the arbitrators could have made other reasonable findings of fact resulting in the reduction or increase in the amount of the award, such as whether the treatment was reasonably necessary or whether the treatment was reasonably priced. *See State v. Buccheri-Bianca*, 233 Ariz. 324, 334, ¶ 38 (App. 2013) ("It is not the province of an appellate court to reweigh evidence or reassess the witnesses' credibility.") (citations omitted); *see also Pawlicki v. Farmers Ins. Co.*, 127 Ariz. 170, 173 (App. 1980) (finding the trial court erred in setting aside an arbitration award based on the basis that the award did not conform to evidence); *Hirt*, 118 Ariz. at 545 (noting that absent fraud, corruption, or exceeding the scope of the arbitration agreement, arbitration decisions on both questions of law and fact are final and conclusive).

**¶16** Because the evidence clearly conflicts and the arbitrators had broad discretion to determine the amount of the final award, the trial court did not abuse its discretion in confirming the arbitration award.

## II. The Trial Court Did Not Err in Denying Progressive's Request for Attorneys' Fees and Costs.

**¶17** Progressive cross-appeals the denial of its motion for attorneys' fees and costs. The interpretation and application of statutes authorizing an award of attorneys' fees and costs are questions of statutory interpretation, which we review *de novo*. *See Democratic Party of Pima Cnty. v. Ford*, 228 Ariz. 545, 547, ¶ 6 (App. 2012) (citing *Zeagler v. Buckley*, 223 Ariz. 37, 38, ¶ 5 (App. 2009)). But we review the denial of an award of attorneys' fees and costs for an abuse of discretion. *Id.* (citing *Orfaly v. Tucson Symphony Soc'y*, 209 Ariz. 260, 265, ¶ 18 (App. 2004)).

### A. Attorneys' Fees

**¶18** Progressive argues its attorneys' fees are recoverable under A.R.S. § 12-341.01(A) which permits a fee award in a "contested action arising out of contract." Progressive asserts this dispute is an action arising out of contract because it is analogous to that presented in *Assyia v. State Farm Mutual Automobile Insurance Co.*, in which this Court held that a dispute over an insurer's refusal to cover damages claimed under an underinsured driver insurance policy "arose out of" contract for purposes

of awarding attorneys' fees under A.R.S. § 12-341.01. 229 Ariz. 216, 220-21, ¶¶ 10-14 (App. 2012). We disagree.

**¶19** Unlike the dispute in *Assyia*, this case was submitted to arbitration. Our supreme court has held A.R.S. § 12-341.01(A) does not apply to arbitration challenge proceedings because the Uniform Arbitration Act provides the proper statutory basis for awarding attorneys' fees in A.R.S. § 12-1514. *Canon Sch. Dist. No. 50 v. W.E.S. Constr. Co.*, 180 Ariz. 148, 153 (1994). Section 12-1514 states:

> Upon the granting of an order confirming, modifying or correcting an award, judgment or decree shall be entered in conf[o]rmity therewith and be enforced as any other judgment or decree. Costs of the application and of the proceedings subsequent thereto, and disbursements may be awarded by the court.

Although the statute does not explicitly contain the term "attorneys' fees," our supreme court has interpreted A.R.S. § 12-1514 to authorize the trial court to make an award for attorneys' fees incurred during arbitration challenge proceedings. *Canon School Dist.*, 180 Ariz. at 154. This award is subject to the discretion of the trial court. *See* A.R.S. § 12-1514 ("Costs of the application and of the proceedings subsequent thereto, and disbursements *may* be awarded by the court.") (emphasis added).

**¶20** Determining whether the trial court abused its discretion in denying a request for attorneys' fees incurred in the course of arbitration challenge proceedings under A.R.S. § 12-1514 is an issue of first impression. We find it appropriate to apply the established principles governing the review of a court's decision to decline an award of attorneys' fees pursuant to A.R.S. § 12-341.01. Therefore, although neither the parties nor the court recognized the applicability of A.R.S. § 12-1514, the court acted within its discretion so long as it had reasonable grounds for denying Progressive's motion. *See Associated Indem. Corp. v. Warner (Warner II)*, 143 Ariz. 567, 570-71 (1985) (noting that, in review of a decision to grant or deny attorneys' fees, courts should ask "whether a judicial mind, in view of the law and circumstances, could have made the ruling without exceeding the bounds of reason") (quoting *Davis v. Davis*, 78 Ariz. 174, 179 (1954) (Windes, J., specially concurring)). Several factors have been recognized as useful in determining whether an award of attorneys' fees is appropriate, including:

> The merits of the claim or defense presented by the unsuccessful party[; t]he litigation could have been avoided

or settled and the successful party's efforts were completely superfluous in achieving the result[; a]ssessing fees against the unsuccessful party would cause an extreme hardship[; t]he successful party did not prevail with respect to all of the relief sought[;] . . . the novelty of the legal question presented[;] . . . whether such claim or defense had previously been adjudicated in this jurisdiction[;] . . . [and] whether the award in any particular case would discourage other parties with tenable claims or defenses from litigating or defending legitimate . . . issues for fear of incurring liability for substantial amounts of attorney's fees.

*Id.* at 570 (quoting *Associated Indem. Corp. v. Warner (Warner I)*, 143 Ariz. 585, 589 (App. 1983), and citing *Wistuber v. Paradise Valley Unified Sch.*, 141 Ariz. 346, 350 (1984)).

**¶21** Progressive argues the court abused its discretion by only considering one of these factors — the hardship that an award of attorneys' fees would impose upon Tessler. *See Warner II*, 143 Ariz. at 570. Progressive's argument is unpersuasive. Although the trial court "should consider all the relevant factors in exercising its discretion," it is not required to make an explicit finding regarding each one. *See Uyleman v. D.S. Rentco*, 194 Ariz. 300, 305, ¶ 27 (App. 1999) (upholding a denial of attorneys' fees "[a]lthough the trial court gave no reasons for denying the request for fees"). To the contrary, we presume the trial court knows and follows the law, regardless of the status of the record. *Fuentes v. Fuentes*, 209 Ariz. 51, 58, ¶ 32 (App. 2004) (citing *State v. Trostle*, 191 Ariz. 4, 22 (1997); *see Wilcox v. Waldman*, 154 Ariz. 532, 538 (App. 1987) ("The trial court's decision will be upheld unless there exists no reasonable basis in the record upon which its decision could have been made."). We therefore find the trial court need not have explicitly stated that it considered each factor in denying Progressive's motion for attorneys' fees, so long as the grounds for its decision were reasonable.

**¶22** Progressive argues "undue hardship," as articulated by the trial court is an unreasonable ground for denial of its motion because it does not equate to "extreme hardship" as stated in *Warner II*. However, no court has ever made such a semantic distinction in applying this factor, and we find no reason to distinguish the terms. Simply stated, if the hardship was

not extreme, it would not be "undue."[7] As long as the party claiming undue hardship "com[es] forward with *prima facie* evidence of financial hardship," we will not disturb the trial court's decision to deny an award of attorneys' fees. *See Woerth v. City of Flagstaff*, 167 Ariz. 412, 420 (App. 1990) (holding a claim of undue hardship was insufficient where no specific supporting facts were presented by affidavit or testimony). In opposition to Progressive's motion for attorneys' fees, Tessler submitted an affidavit wherein she declared that she is unemployed, has over $60,000.00 in debt, and does not have any real estate or similar assets, satisfying her burden of presenting *prima facie* evidence of hardship.

¶23 We conclude the trial court's decision to deny Progressive's motion for attorneys' fees is supported by reasonable evidence, notwithstanding application of the incorrect statute, and find no error.

### B. Costs

¶24 Progressive also argues the trial court erred by refusing to award it costs and asserts that under A.R.S. § 12-341, "[a] cost award 'is mandatory in favor of the successful party.'" *Assyia*, 229 Ariz. at 223, ¶ 32 (quoting *In re Estate of Miles*, 172 Ariz. 442, 444 (App. 1992)). We again find that Progressive seeks a remedy under the wrong statute.

¶25 In an arbitration subject to the Uniform Arbitration Act, A.R.S. § 12-1514 governs the award of costs in arbitration challenge proceedings. And unlike A.R.S. § 12-341, an award of costs incurred during an arbitration challenge proceeding is discretionary. *See* A.R.S. § 12-1514 ("Costs of the application and of the proceedings subsequent thereto, and disbursements *may* be awarded by the court.") (emphasis added). Applying the same principles governing discretionary awards as discussed *supra* ¶¶ 19-22, we will not disturb the trial court's exercise of discretion in denying costs where, as here, reasonable grounds for denying the award exist. We therefore affirm the court's denial of Progressive's motion for costs.

### III. Attorneys' Fees and Costs Are Not Awarded on Appeal.

¶26 The parties each request attorneys' fees and costs incurred in this appeal pursuant to A.R.S. §§ 12-341, -341.01, and -343 and ARCAP 21. Although Progressive prevailed on appeal, these statutes do not provide a

---

7 Indeed, "undue" is defined as "erring by excess; excessive; unreasonable; immoderate; as, . . . an *undue* rigor in the execution of law." Webster's New Universal Unabridged Dictionary 1195 (2d ed. 1983).

basis for an award of attorneys' fees or costs incurred in arbitration challenge proceedings. See ARCAP 21(a)(2) (authorizing the appellate court to decline an award of attorneys' fees where the party fails to "specifically state the statute, rule, decisional law, contract, or other authority for an award of attorneys' fees"). Even if Progressive had identified the appropriate statutory basis, we would exercise our discretion to deny an award of attorneys' fees and costs because of the undue hardship such an award would impose upon Tessler.

## CONCLUSION

¶27         For the foregoing reasons, we affirm the judgment of the trial court.



Ruth A. Willingham · Clerk of the Court
FILED: ama