NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

KRISTY PULKRABEK, *Petitioner/Appellee,*

*v.*

ADRIAN PULKRABEK, *Respondent/Appellant.*

No. 1 CA-CV 22-0204 FC
FILED 11-3-2022

Appeal from the Superior Court in Maricopa County
No. FC2014-001602
The Honorable Ronda R. Fisk, Judge

**AFFIRMED**

COUNSEL

Singer Pistiner PC, Scottsdale
By Robert S. Singer, Jason Pistiner
*Counsel for Petitioner/Appellee*

Bishop Del Vecchio & Beeks Law Office PC, Phoenix
By Daniel P. Beeks
*Counsel for Respondent/Appellant*

**MEMORANDUM DECISION**

Presiding Judge Jennifer M. Perkins delivered the decision of the Court, in which Judges James B. Morse Jr. and Michael J. Brown joined.

**P E R K I N S,** Judge:

¶1 Adrian Pulkrabek ("Father") appeals several rulings in this post-decree proceeding. For the reasons stated below, we affirm the superior court's order modifying legal decision-making authority, parenting time, and child support. We also affirm the award of attorneys' fees to Kristy Pulkrabek ("Mother"). We exercise our discretion to take special action jurisdiction over the contempt ruling but deny relief.

**FACTS AND PROCEDURAL BACKGROUND**

¶2 Under a 2017 dissolution decree, the parties shared joint legal decision-making authority for Caleb, born in 2010, and Blake, born in 2012. We use pseudonyms to protect the children's identities. Blake has a rare genetic disorder that causes significant health, sensory, and developmental issues. The decree gave Mother final say as to any disputes relating to Blake. The parties had equal parenting time with Caleb, but Father had slightly less than equal time with Blake.

¶3 Since the decree, the parties have filed multiple petitions for contempt and to enforce and modify the decree. But the superior court made no changes to the decree's legal decision-making and parenting time provisions until it entered the orders at issue here. This appeal stems from cross petitions to modify legal decision-making authority, parenting time, and child support, as well as competing contempt petitions.

¶4 The superior court found modification was warranted and granted Mother sole legal decision-making authority for Blake but continued joint legal decision-making authority for Caleb. The court modified Father's parenting time so he had both children every other weekend; summer and holiday parenting time remained the same. As a result of the change in parenting time, Father's child support obligation also changed. The child support order again included an expense of $1,000 for childcare provided by the maternal grandmother ("Grandmother"). As relevant to the appeal, the superior court found Father in contempt for

failing to pay his share of Blake's therapeutic horseback riding expenses. Finally, the court awarded Mother $11,900 in attorneys' fees and costs. Father timely appealed.

**¶5**     We have appellate jurisdiction over the order modifying legal decision-making authority, parenting time, child support, and the award of attorneys' fees. A.R.S. § 12-2101(A)(2). We exercise our discretion to take special action jurisdiction and consider the contempt ruling. *See Danielson v. Evans*, 201 Ariz. 401, 411, ¶ 35 (App. 2001) (although this court lacks jurisdiction over an appeal from a civil contempt finding, it may treat it as a petition for special action and accept jurisdiction).

## DISCUSSION

### I.     Changed Circumstances

**¶6**     When considering a petition to modify legal decision-making authority and parenting time, the superior court must first determine whether there has been a change in circumstances materially affecting the children's welfare. *Backstrand v. Backstrand*, 250 Ariz. 339, 343, ¶ 14 (App. 2020) (citation omitted). Only if it finds such a change does the court determine whether the proposed modification is in the children's best interests. *Id.* The court has broad discretion to decide whether a change in circumstances has occurred, and we will affirm absent an abuse of discretion. *Id.*

**¶7**     Father argues that Mother must show changed circumstances that were not known at the time of the decree. That is incorrect. Mother must show a change in circumstances "unknown at the time of the original decree, *or occurring subsequent to the decree.*" *Davis v. Davis*, 78 Ariz. 174, 176 (1954) (emphasis added) (citation omitted); *see also Backstrand*, 250 Ariz. at 344–45, ¶¶ 17, 21 (holding a material change may occur "when the change has caused the original decree to serve its purpose no longer") (citations omitted).

**¶8**     The superior court noted the parties' continued acrimony and inability to co-parent would not generally constitute a material change in circumstances, but found it now caused harm to the children. The court also found that Blake is now in school and some of his health symptoms have changed since the decree. Finally, the court found that having different parenting plans for each child was causing Caleb anxiety. All these changes occurred since the decree; or, in the case of the continued animosity, have since become detrimental to the children and caused the decree to no longer serve the children's best interests. Specifically, Blake was not school-aged

at the time of the decree. The fact that Blake now attends school full-time has given rise to new disputes between the parents and constitutes a change in circumstances. And Caleb's therapist stated that the different parenting time schedules caused him anxiety. The superior court did not abuse its discretion in finding changed circumstances.

## II.    A.R.S. § 25-403(B) Findings

**¶9**        When deciding contested legal decision-making or parenting time, the superior court must consider the factors listed in A.R.S. § 25-403(A) *and* set forth the reasons why its decision is in the children's best interests. A.R.S. § 25-403(B). The court abuses its discretion when it fails to make the necessary findings. *Hurd v. Hurd*, 223 Ariz. 48, 51, ¶ 11 (App. 2009) (citations omitted). Father argues the court did not explain why it was in the children's best interests to award Mother sole legal decision-making as to Blake and reduce his parenting time as to both children. He does not claim that the court disregarded a particular factor, just that it did not explain its ruling.

**¶10**        We require written findings to aid appellate review and, more importantly, to ensure that the children's current and future best interests are met. *Gutierrez v. Fox*, 242 Ariz. 259, 267–68, ¶ 34 (App. 2017) (citation omitted). Findings provide a baseline against which the court can measure any alleged changed circumstances in future modification petitions. *Reid v. Reid*, 222 Ariz. 204, 209, ¶ 18 (App. 2009) (citations omitted). We review the superior court's legal decision-making and parenting time orders for an abuse of discretion. *Engstrom v. McCarthy*, 243 Ariz. 469, 471, ¶ 4 (App. 2018).

**¶11**        The superior court issued written findings addressing each relevant factor. They explain (with citations to the record) why the court found that awarding Mother sole legal decision-making authority for Blake and modifying Father's parenting time was in the children's best interests. For example, Father has violated parenting time orders since the decree. The parties remain unable to effectively co-parent despite co-parenting therapy and their conflict now negatively affects the children. Father's relationship with the children, particularly Caleb, has deteriorated since the decree. The court found Father minimized the impact of Blake's developmental and other differences, and the record supports this finding. Similarly, the court found Father continues to disregard Caleb's wishes and safety concerns by having the children engage in certain extracurricular activities. And the court agreed with Mother's expert witness that there

were reasons to be concerned about Father's anger management skills and his ability to accept criticism, which may result in inappropriate responses.

¶12 By contrast, the superior court found that Mother has primarily managed Blake's multiple therapies and medical visits as if it were a second full-time job. Father's involvement was inconsistent, largely because of his work schedule, but tended to correspond to court hearings. At times, Father interfered with the children's appointments. The evidence showed Blake needed consistency. The court specifically found continuing joint legal decision-making authority was "ill-advised." The court found no evidence to support Father's claim that Mother disregarded the joint legal decision-making orders for Caleb or that her final say over Blake constituted duress or coercion.

¶13 The parties agreed with Caleb's therapist that having the children on the same parenting time schedule will reduce Caleb's anxiety. Caleb's therapist stated that he had anxiety "because he worries too much about his brother." The court rejected Father's allegation that Mother's alienation caused Caleb to run away from Father's home. Caleb explained to his therapist that he ran away because he felt uncomfortable at Father's house.

¶14 In discussing each factor, the superior court provided detailed findings and explanations that show why it found the modification was in the children's best interests. The court satisfied the statutory requirements for written factual findings and explanations.

## III. Consideration of the Children's Wishes and Denial of the Request to Interview Caleb

¶15 Father argues the superior court made contradictory findings about the children's wishes. In analyzing the best interests factors, the superior court did not consider the children's wishes because neither child was of suitable age and maturity. *See* A.R.S. § 25-403(A)(4). When the court considered the interaction and interrelationship of the children with the parent and siblings, it found that "[Caleb] independently has stated he does not want to go to Father's home." *See* A.R.S. § 25-403(A)(2). Viewing the broader context in which Caleb made this statement, we find no inconsistency.

¶16 Father accused Mother of bribing Caleb to run away from Father's home, which Mother denied. The Court-Appointed Advisor spoke to Caleb's therapist who explained that Caleb said he ran away from Father's home because he "was uncomfortable" and denied that Mother

told him to do so. The court considered Caleb's statement in addressing and rejecting Father's claim of parental alienation. Caleb's explanation to his safe-haven therapist why he ran away is different than having him tell the court which parent he wants to live with. We find no abuse of discretion.

¶17    Father also contends the superior court erred in denying his request to interview Caleb. Although the court found the request was untimely, it also denied the request because an interview was unnecessary. The court also found it was inappropriate to interview a child to show parental alienation. The court had discretion to deny the formal court interview for these reasons. *See* A.R.S. § 25-405(A) (giving the courts discretion to interview a child "to ascertain the child's wishes as to the child's custodian and as to parenting time."); Ariz. R. Fam. Law P. ("Rule") 12(a) (same).

¶18    To be sure, the superior court should consider all admissible evidence relevant to the children's best interests. *Kelly v. Kelly*, 252 Ariz. 371, 375, ¶¶ 18–19 (App. 2021) (citing *Johnson v. Johnson*, 64 Ariz. 368, 370 (1946)). And the court's authority to exclude evidence as a sanction is limited by its obligation to consider the children's best interests. *Id.* (citing *Hays v. Gama*, 205 Ariz. 99, 102–03, ¶ 18 (2003)). But the court's ruling was not a sanction and, significantly, it aligns with Caleb's best interests. An earlier order found that Caleb should participate in safe-haven therapy "so that he may freely express his feelings to the counselor without fear of either parent interfering in the process, or fear of retaliation." It is reasonable to infer that expressing a parental preference would detrimentally affect Caleb, who already required safe-haven therapy as result of the ongoing parental strife. We find no abuse of discretion.

## IV.    Equal Parenting Time

¶19    Citing *Woyton v. Ward*, Father argues that Arizona recognizes a presumption that equal or near-equal parenting time is in a child's best interests, so the reduction of his parenting time was an abuse of discretion. 247 Ariz. 529, 531, ¶ 6 (App. 2019). In *Smith v. Smith*, this court held that equal parenting time was the "starting point," and if the evidence showed that equal or near-equal parenting time was not in a child's best interests, then the court may adjust parenting time accordingly. 508 P.3d 793, 796–97, ¶¶ 16–17 (Ariz. App. 2022) (citing *Woyton*, 247 Ariz. at 531, ¶ 6).

¶20    Father contends the holdings in *Smith* and *Woyton* conflict and invites this court to apply the language in *Woyton*. But even assuming an initial presumption of equal parenting time, the record supports the court's

determination that something other than equal parenting time was in the children's best interests. A.R.S. § 25-403(A) ("The court shall determine . . . parenting time . . . in accordance with the best interests of the child."). The court did not err in reducing Father's parenting time.

## V. Evidentiary Rulings

**¶21** Father argues that the superior court erroneously relied on several exhibits that were not admitted into evidence. We review the admission or exclusion of evidence for an abuse of discretion. *Yauch v. S. Pac. Transp. Co.*, 198 Ariz. 394, 399, ¶ 10 (App. 2000). Father must also show prejudice as a result of any alleged error. *Id.*; *see also* Rule 86 ("At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.").

**¶22** The superior court quoted from the report prepared by Mother's expert, Dr. Buwalda. This report was excluded based on Father's hearsay objection. But Dr. Buwalda testified to the statements in the report and Father did not object. Dr. Buwalda's testimony supports the court's finding that Father has anger issues. Because Father did not object to Dr. Buwalda's testimony or her qualification as an expert at the hearing, we do not consider those objections now. *Trantor v. Fredrikson*, 179 Ariz. 299, 300 (1994) ("Because a trial court and opposing counsel should be afforded the opportunity to correct any asserted defects before error may be raised on appeal, absent extraordinary circumstances, errors not raised in the trial court cannot be raised on appeal.") (citations omitted).

**¶23** The court also cited an unadmitted exhibit to support its finding that Caleb "switched schools a couple of months into the year." As Father concedes, other evidence supports this finding. Therefore, he was not prejudiced.

**¶24** Finally, Father contends the superior court cited two unadmitted exhibits when finding Mother was not in contempt of prior orders to keep him up to date about health care appointments. The court cited three exhibits to support this finding. One of those exhibits was properly admitted and supports the court's finding. Mother's testimony also supports this finding. Thus, we find no prejudice.

## VI. Childcare Costs

**¶25** In a June 2018 order modifying child support, the child support worksheet allocated a $500 monthly childcare credit to both parents. Grandmother provided the childcare. The court later ordered

Father to pay $500 directly to Grandmother. In July 2019, the court found Father in contempt because he never paid Grandmother, rejecting his allegation of a "kickback" scheme between Mother and Grandmother. Father continued in his refusal to pay. In these proceedings, he argued that the childcare Grandmother provided was not worth $500 a month. The court again found Father in contempt of the order to pay Grandmother $500 a month for childcare. Going forward, the modified child support worksheet includes a monthly childcare cost of $1,000 paid by Mother.

**¶26** Father argues the evidence does not support the $1,000 in monthly childcare costs. The superior court has broad discretion to determine the appropriate amount of child support, and we will affirm the child support order if competent evidence supports it. *Nash v. Nash*, 232 Ariz. 473, 478, ¶ 16 (App. 2013).

**¶27** Father testified that at the time of the original order, Grandmother provided full-time childcare for Blake because he was not yet in school. According to Father, Grandmother provides one hour a week of childcare during his parenting time because Blake is now in school full-time. Mother testified that Grandmother provides an average of 20 to 30 hours of childcare a week. Grandmother is trained to handle Blake's specific needs, and she is essentially on call and provides care whenever she is needed. Mother did not say how much care Grandmother provides during Father's parenting time. Although Father's childcare needs may have decreased as a result of Blake attending school full-time and the reduction in his parenting time, that does not necessarily mean Mother's childcare needs have decreased. The court was within its discretion to accept Mother's estimation to how many hours of childcare Grandmother provides.

**¶28** The court reasonably accepted the valuation for the amount of personalized, on-demand care Grandmother provides at $1,000 a month. Father cites no authority for his contention that Mother must offer expert testimony about the fair market value of childcare services. The memorandum decision on which he relies did not hold that expert testimony was *required. See Murphy v. Rodriguez*, 1 CA-CV 21-0383, 2022 WL 1748055, at *3, ¶ 19 (Ariz. App. May 31, 2022) (mem. decision). *Murphy* noted only that an expert testified in that case. *Id.* We find no error.

## VII. Reimbursement for Therapeutic Horseback Riding Expenses

**¶29** The superior court found Father in contempt for failing to pay his share of uncovered medical expenses, which included the cost of Blake's

therapeutic horseback riding. Father argues this was error because it is not a "medical" expense.

¶30            We disagree. The Arizona Child Support Guidelines require the court to specify the percentage each parent shall pay for uncovered medical expenses "as defined by Internal Revenue Service Publication 502." *See* A.R.S. § 25-320 app. ("Guidelines") § 9(A) (2018). The IRS allows "therapy received as medical treatment" and states that "medical care expenses must be primarily to alleviate or prevent a physical or mental disability or illness." *See* IRS, Publication 502 Medical and Dental Expenses, 2021 WL 8154888, at *2, *18. Mother testified that Blake's medical providers recommended hippotherapy which is "therapy on a horse" but it was unavailable. Instead, she found and enrolled him in therapeutic horseback riding provided by certified therapists, which Blake's providers agree offers the same benefit as hippotherapy. Her testimony supports the finding that this constitutes a medical expense under the Guidelines.

## VIII.   Attorneys' Fees Award

¶31            The superior court awarded attorneys' fees and costs to Mother based on Father's unreasonableness during the litigation on the competing petitions. It "further found" that Mother was entitled to fees on two of her contempt claims. Although Mother sought over $48,000 in attorneys' fees and costs, the court awarded her $11,900. Father argues this was clear error because (1) the amount was not reasonable for two contempt issues, and (2) the court did not explain how it reached this figure. We review the award of fees under § 25-324 for an abuse of discretion. *Myrick v. Maloney*, 235 Ariz. 491, 494, ¶ 6 (App. 2014).

¶32            Father's argument is based on the incorrect premise that the superior court awarded fees for the two contempt issues *exclusively*. But the court also found that Father acted unreasonably, citing Father's own unreasonable contempt allegations and his position on Blake's school. Therefore, the fee award was not limited to the two contempt issues on which Mother prevailed.

¶33            And Mother did not waive this argument. Her fee application noted that one of the bases for the fee award was Father's unreasonable positions about Blake's school and his contempt allegations. In fact, Father responded to this argument below.

¶34            "Because neither party requested written findings of fact or conclusions of law [under Rule 82], we presume that the superior court found every fact necessary to support its ruling." *Rinegar v. Rinegar*, 231

Ariz. 85, 90, ¶ 20 (App. 2012) (citation omitted). Detailed findings were not required. The court awarded Mother a significantly reduced amount of fees. Because several billing entries showed work on Mother's combined petition to modify/for contempt, the court properly exercised its discretion to reduce the overall amount of fees requested to an award it considered appropriate. *See City of Cottonwood v. James L. Fann Contracting, Inc.*, 179 Ariz. 185, 194 (App. 1994) (holding the trial court is in a better position to determine when a claim is intertwined with one for which fees are not awardable and the appellate court will affirm if there is a reasonable basis for the award) (citations omitted).

### ATTORNEYS' FEES AND COSTS ON APPEAL

**¶35** Both parties request an award of attorneys' fees on appeal under A.R.S. § 25-324. After considering the financial resources and the reasonableness of the parties' positions throughout the litigation, we order each party to bear their own attorneys' fees on appeal. As the successful party on appeal, Mother is entitled to recover her reasonable costs upon compliance with Arizona Rule of Civil Appellate Procedure 21. *See* A.R.S. § 12-342(A); Ariz. R. Civ. App. P. 21.

### CONCLUSION

**¶36** We affirm the modification order and award of attorneys' fees. We accept special action jurisdiction over the contempt ruling but deny relief.



AMY M. WOOD • Clerk of the Court
FILED:    AA